RICHMOND & DANVILLE RAILROAD CO. *v.* BENSON & Co.

1. Where the declaration prayed for process requiring the defendant to appear at the August term of the court, that being the next regular term, but by clerical mistake the process attached by the clerk and dated July 16th commanded the defendant to appear at the next term to be held on the first Monday in July, and the defendant by counsel appeared at the August term and moved to dismiss the case because the process was void, the court, having jurisdiction of the case, could allow the process to be amended.

2. Where goods were directed to be carried from Richmond, Va., to Augusta, Ga., but instead of being carried directly they were sent to Atlanta, Ga., thence to Charlotte, N. C., and thence to Augusta, and where they should have been received in Augusta on the first of September but were not received until the 8th, and on the 10th they were destroyed by a flood, and where from the 1st to the 10th the consignees sent daily to the depot of the carrier, exhibited the bill of lading and asked for and described the goods, but were informed that they had not arrived, though in fact they were then in the possession of the carrier, the agent of which afterwards admitted that they had arrived two days before the flood, and that by carelessness at headquarters the way-bill was not sent with them and was not received until after they were destroyed, the carrier was liable for their value.

(a) That the contract of carriage exempted the carrier from liability for wrong carriage or wrong delivery of goods marked with initials or numbers or imperfectly marked, and that the goods in question were marked not with the name of the consignees but simply with a number in lieu thereof, does not excuse the carrier from liability ; it appearing that the name of the consignees, as well as the number, was on the bill of lading, and that the carrier refused to deliver the goods to them and did not deliver them to any one.

3. There was no error in admitting in evidence the bill of lading over the objection that there was no proof of its execution, or of the signature thereto, or of the agency of the person purporting to have signed it.

4. There being no evidence that the carrier acted in bad faith or was stubbornly litigious or put the plaintiffs to unnecessary expense, an instruction that the jury could add reasonable attorneys' fees to the actual damages, was erroneous.

November 21, 1890.

Practice. Process. Amendment. Railroads. Carriers. Evidence. Damages. Attorneys' fees. Before Judge EVE. City court of Richmond county. August term, 1890.

Reported in the decision.

Pope Barrow, for plaintiff in error.
J. S. & W. T. Davidson, *contra.*

Simmons, Justice.

Benson & Co. sued the railroad company for damages occasioned by the loss of certain goods described in the declaration. The process attached to the declaration commanded the defendant "to be and appear at the city court of Richmond county next to be holden in and for the county aforesaid, on the first Monday in July, 1889"; and was dated July 16th, 1889, and signed by the clerk of the city court. The regular term of the court was the first Monday in August. The defendant, by its counsel, appeared at the regular term and moved to dismiss the case because the process was void. On motion of plaintiff's counsel, the court allowed the process to be amended; and to this ruling the defendant excepted *pendente lite* and assigned error thereon. The trial was had, and the jury returned a verdict for the plaintiff. The defendant moved for a new trial on the grounds set out in the motion, which was refused, and it excepted.

1. We do not think the court erred in allowing the process to be amended. We do not agree with counsel for the plaintiff in error that the process was void, and therefore not amendable under section 3490 of the code. The declaration prayed for process requiring the defendant "to be and appear at the August term" of the court; and the process was issued in the name of the judge of that court, and signed by the clerk thereof, but by a clerical mistake the defendant was cited to appear the first Monday in July, instead of the first Monday in August. The court had jurisdiction of the case, and it seems from the record that the process was sufficient to bring the defendant to the regular

term of the court, at which time it made this motion. to dismiss.   Among the powers conferred upon every court by the code, §206(6), is the power "to amend and control its process and orders, so as to make them conformable to law and justice."   In the case of *Townsend* v. *Stoddard*, 26 *Ga*. 430, where the process required the defendant to appear on the second Monday in April, and the time fixed by law for holding the court was the fourth Monday in April, this court held the process amendable.   In *Covington* v. *Cothrans*, 35 *Ga*. 156, it was held that an attachment issued on the 3d of April, 1866, returnable to the "inferior" court, was amendable by inserting the word "county" instead of "inferior." Walker, J., in delivering the opinion of the court, said: "The defendant was not ignorant of the court to which, the process was returned, for he appeared at the proper term and objected to the proceedings, because a single word 'inferior' had been used by the mistake of a ministerial officer for the word 'county.'   The time for such trifling is past."   In the case of *Blake* v. *Camp*, 45 *Ga*. 298, an attachment was sued out, returnable by law to the 1120th district G. M., but the magistrate, by mistake, made the attachment returnable to the 919th district.   The levying officer returned the papers to the proper district, to wit, the 1120th, and judgment was then entered upon the attachment.   It was held that the judgment was not void, and McCay, J., said: "We do not think this mistake makes the proceedings void. It is not the written direction to the sheriff or, constable which gives the court jurisdiction, but the law. If the officer had obeyed the direction and returned the papers as directed, the court to which it would then have been returned would not have had jurisdiction, and the judgment would have been void.   As it is, the court which tried the case was authorized to do so by the statute.   Our statute of amendments is very broad.

No technical objections even to a process are to be regarded, if the court has jurisdiction." In the case of *Williams* v. *Buchanan*, 75 *Ga.* 789, the original process required the defendant to appear " on the second Monday in April next," but by mistake the copy process required him to appear " on the second Monday in December next." The process was dated December 28th. The following April was the time of the regular term, and no term of the court was to meet in December. It was held that service of this declaration and copy process was sufficient to put the defendant on notice of the case. Jackson, C. J., in the course of the opinion, said: " When a man knows that he is sued, and is served with a copy of the declaration which tells him what he is sued for and in what court, it would be well for him to step to the clerk of that court and find out something about any little mistake in the process, and attend at the first term to take advantage of the mistake, if it would avail him, or have it corrected and put off a term, if the court so decided; especially would it be prudent not to delay action until after trial term, verdict, judgment and execution, and then set up the mistake of the clerk, which must have been known to him the moment he read the copy declaration and process handed him by the sheriff, and called to mind the fact, known to everybody in Sumter county, that the superior court met in April and not in December." The code, §3345, declares: "No technical or formal objections shall invalidate any petition or process, but if the same substantially conforms to the requisitions of this code, and the defendant has had notice of the pendency of the cause, all other objections shall be disregarded: provided, there is a legal cause of action set forth as required by this code."

The ruling in *Lowrey* v. *Richmond & Danville R. Co.*, 83 *Ga.* 504, does not conflict with the ruling in this

case. As will be seen from a casual reading of that case, its facts were different from the facts in the present case. In that case the petition was addressed to the city court of Atlanta and process was prayed returnable to that court, but the clerk of the superior court of Fulton county, who was also *ex officio* clerk of the city court, annexed to the declaration and to the copy which was served on the defendant, a process requiring it to appear at an impossible term of the superior court, which process bore test in the name of the judge of the superior court and was signed by the clerk of the superior court. The process was held to be void for the reason that the suit was filed in the city court but the process required the defendant to appear in the superior court, and bore test in the name of the judge of the superior court and was signed by the clerk of the superior court as such, and not as clerk of the city court of Atlanta.

2. The main question argued before us in this case was as to the liability of the railroad company under the facts disclosed in the record. Counsel for the plaintiff in error insisted that the railroad company was not liable, because the goods were destroyed by an unprecedented flood, and under the law a common carrier is not liable for damage occasioned by the act of God. Counsel for the defendant in error replied that while it was true that the goods were destroyed by the flood, the facts show that if it had not been for the negligence of the defendant in delaying the goods an unreasonable time upon its road and detaining them in its depot after arrival at their destination, the flood would not have operated so as to injure or destroy them. Whether the law be that a common carrier is not liable when the damage is caused by the act of God though the negligence of the carrier contributed to the damage, or whether it be that the carrier is liable when the carrier's

negligence concurs with the act of God in causing the
damage, is a question upon which we find the author-
ities very conflicting; but it is unnecessary for us to
decide that question here. The facts show that the
goods were directed to be shipped from Richmond, Va.,
to Augusta, Ga.; but instead of shipping them directly
to Augusta, the carrier shipped them first to Atlanta,
Ga., and reshipped them from Atlanta to Charlotte, N.
C., and from Charlotte, N. C., shipped them to Augusta.
They should have been received in Augusta on the 1st
day of September; but they were not received until the
8th. On the 10th they were damaged by flood. The
evidence shows that from the 1st of September up to
the time of the flood, the consignees sent every day to
the depot of the railroad company and asked for the
goods, and were informed that they had not arrived.
Miller, the clerk of the consignees who went to the agent
of the railroad company and asked for the goods, testi-
fied: "I am quite sure I took the bill of lading with me
and showed it. It was plainly marked on that that the
box was for Benson & Co. We kept sending for the goods
up to the day of the flood." It also appears that while
the box was not marked with the name of Benson & Co.,
the consignees, but was marked simply with the figure
3005 in lieu of the name, their name did appear on the
"way-bill" sent by the company to its agent in Augusta;
and that the agent admitted, after the flood, that the loss
was occasioned by carelessness at headquarters in not
sending the way-bill with the goods; that the goods had
arrived two days before the flood, and the way-bill was
not received by him until after the goods were destroyed.
Under these facts, we think that when Benson & Co.
sent their clerk to the agent at Augusta and demanded
the goods, and the clerk showed the agent the bill of
lading with the entries thereon, and told him that the
goods were a box of cheroot cigars (as he said in his

evidence he told him), and the goods were then in the possession of the railroad company, as the evidence shows they were, and the agent failed or refused to deliver them, it was a conversion of the goods on the part of the railroad company, and if the goods were subsequently destroyed by the flood, the railroad company was liable for the value thereof. If the goods had arrived at their destination and were in the possession of the railroad company, and Benson & Co. had carried their bill of lading and demanded possession thereof and the company had refused to deliver them, Benson & Co. could have commenced their action of trover at once against the railroad company and recovered the value of the goods, although they were subsequently destroyed by the flood.

But it is claimed by the railroad company that it could not deliver the goods to Benson & Co. because its contract of carriage with the shipper exempted it from liability from "wrong carriage or wrong delivery of goods that are marked with initials, numbers or imperfectly marked"; and that as these goods were simply marked 3005, the railroad company was not liable because it did not deliver them. We think that if the railroad company had delivered them to somebody else who had a bill of lading for a package of goods marked 3005, it perhaps would not have been liable; but as it did not deliver them to any one, and refused to deliver them to Benson & Co. when demanded upon their bill of lading, we do not think this clause in the contract applies.

3. It is complained that the court erred in admitting in evidence the bill of lading, because there was no proof of its execution, or of the signature thereto, or of the agency of the person purporting to have signed it. Under the evidence, we think there was no error in admitting the bill of lading, as it was sufficiently proved.

v 26-14

4. The plaintiff in error also complains that the court erred in charging the jury: "If you believe from the evidence that the defendant has acted in bad faith or has been stubbornly litigious, or that it has put the plaintiffs to unnecessary expense in this matter, then you can add to the actual damages reasonable attorney's fees"; and that under this charge the jury returned a verdict for $30 attorney's fees, and that this verdict was contrary to the evidence. We think this exception is well-taken. There is no evidence in the record that the defendant acted in bad faith or was stubbornly litigious or put the plaintiffs to unnecessary expense. All that the defendant in the court below seems to have done was to appear in court and insist on what it claimed was its legal rights. The judgment must therefore be reversed and a new trial had, unless the plaintiff shall voluntarily write off from the verdict the sum of $30; but in the event the plaintiff shall consent to do so, the judgment of the court below shall stand affirmed.    *Judgment reversed, with direction.*