## 1918. RYLEE *v.* BANK OF STATHAM.

1. Where it is shown that a paper which would afford evidence material to the issue is in court, in the possession of a witness, it is the duty of the judge to require its production instanter, unless it appears that the testimony sought to be elicited is privileged. *Moore* v. *Central Ry. Co.,* 1 *Ga. App.* 514 (58 S. E. 63) ; *Daniel* v. *State,* 55 *Ga.* 223; *Trustees of Chester Church* v. *Blount,* 70 *Ga.* 782.

(a) Communications between an attorney and his clients are privileged; and hence the contents of a letter written by an attorney to his client are privileged. However, neither the fact that the attorney communicated with his client, nor the date of the communication, nor the fact that subsequently the client acted under the attorney's advice, is excluded by reason of privilege. Consequently, the postmark on the envelope which contained the letter from the attorney to the client, or the *date* of the letter itself, is admissible for the purpose of showing the day on which the communication was mailed and received.

2. Although the city courts are without jurisdiction in equity, still they may mold their judgments in accordance with equitable principles, where the defendant interposes an equitable defense. In a case in which the defendant in his answer sets up that he deposited with the plaintiff certain collateral to secure the payment of his indebtedness to the plaintiff, and that his indebtedness has been fully paid, and asks that the plaintiff be required, by the judgment of the court, to return to him his collateral, and upon the trial these statements of the answer are proved without contradiction, the judgment of the city court should be so molded as to require that the defendant's collateral be returned to him.

3. Every citizen is presumed to know the law; and the notice which the statute requires to be given in order to fix upon the defendant liability for attorney's fees (Acts 1900, p. 53) is sufficient if it states the contract upon which suit will be brought, the term of the court to which the suit will be filed, and refers specifically to the act above cited. Such a notice is not in a legal sense misleading though the defendant be notified that he will be liable for attorney's fees unless the principal and interest of his obligation is paid within ten days after the receipt of the notice.

4. A creditor who holds, as collateral security, notes belonging to the debtor, which could have been collected before maturity of his debt, or before return day of the term of court to which suit upon it was brought, can not, as against the debtor, claim a judgment for attorney's fees as to any amount which, by the exercise of ordinary diligence, might have been collected from the collateral. Consequently, where a defendant denies the plaintiff's right to recover attorney's fees, and the burden is thus cast upon the plaintiff to establish his right to such fees, and it appears that the note or contract upon which the attorney's fees are asked was secured by collateral notes sufficient in amount to have discharged the entire liability of the debtor, the plaintiff fails to establish his claim for attorney's fees, unless he shows that the collateral notes were in fact not collectible upon the return day of the court to which suit was brought, either because they were not due, or for some other reason.

5. Where attorney's fees are recoverable at all, their amount is not determined by the amount *claimed to be due* upon return day, but is fixed (except so far as the result may be affected by special circumstances of an equitable nature) by the amount *actually due* on that day, and subsequent interest, if any, as determined either by voluntary payments made subsequently to the return day, or (if no such payment has been made) by the amount of the judgment for principal and interest which the plaintiff is entitled to recover.

6. As such attorney's fees as are recoverable are in the nature of liquidated damages which inure to the benefit of the plaintiff, and are not a provision for the benefit of his attorney, a plaintiff who has given the required notice entitling him to recover attorney's fees may waive them by settling with the defendant in full, or by accepting payments thereon from the defendant, under an agreement or understanding not to insist on the liability created by the notice.

Complaint; from city court of Jefferson—Judge Stark. April 7, 1909.

Argued July 15,—Decided February 25, 1910.

*L. C. Russell,* for plaintiff in error.

*R. L. J. Smith, Cobb & Erwin,* contra.

RUSSELL, J. 1. The first headnote is a sufficient elaboration of the ruling therein contained. It appears from the record to be undisputed that there was an agreement between the plaintiff in error (the defendant in the court below) and a duly authorized agent of the bank, in charge of its affairs, by which the bank agreed that if the defendant would pay before a designated day the principal and interest on the note which formed the basis of the suit, the bank's claim for attorney's fees would be waived. It was contended by the plaintiff in error (and the record shows it was not disputed by the bank) that this agreement remained in force until the cashier of the bank received a letter from Mr. Smith, the attorney for the bank. The defendant contended that the original agreement by which the bank agreed to waive its claim for attorney's fees, upon the condition that he was to pay the principal and interest by the first day of the court (the first Monday in October), was subsequently extended by the agent of the bank, for the reason that it was not convenient for the purchaser of certain cotton, the proceeds of which were to be applied by the defendant upon his note, to weigh or pay for the cotton on that day. The defendant insisted that when he stated to the agent of the bank that the necessity for weighing the cotton would cause a delay, and that he would not permit this unless the bank was willing, he was informed that it would be satisfactory to the bank whenever the cotton could be weighed and paid for by Mr. Camp, the buyer. The cashier of the bank testified that when he received the letter from Mr. Smith, the attorney for the bank, he showed the letter to Rylee, and withdrew any further extension of time. In the issue thus raised it became material to determine when the cashier received the letter; because there can be no dispute that any payments prior to that date would not be chargeable with attorney's fees, under the agreement. The cashier was unable to give the date from recollection. This fact developed upon cross-examination; and, in response to inquiry, he stated that he had the letter in his pocket. Counsel for the plaintiff asked the court to require the witness to produce the letter, for the sole purpose of enabling the witness to fix the date. Upon objection to this by the defendant's counsel, the

court refused to require the witness to produce the letter, even for the purpose stated, upon the ground that it was a confidential communication, and privileged because it was a communication between attorney and client.    We do not think that the rule in relation to advice or information given by counsel to his client is as strict, or as well grounded, as the considerations of public policy which prohibit an attorney's disclosure of facts coming to his knowledge through his client.    The client is supposed to communicate facts which, either directly or indirectly, may relate to his cause.    The attorney does not usually furnish facts, though he is always presumed to correctly furnish the law to his clients.    But conceding that the contention of counsel is well taken and that the contents of the letter were privileged, in so far as any information or advice communicated by Mr. Smith to his client is concerned, still it seems to us that the mere date of the letter (as a fact illustrative of the time when Rylee and the bank cashier had their conversation) could not be in any true sense proof of the communication, certainly not such proof of the nature or contents of the communication as is privileged.    The fact that one wrote to another, as well as the fact that the letter bore the postmark of a certain date, which might be indicative of the time when the letter was written or received, has been held to be admissible, although the contents of the letter might be privileged.    We do not consider the date that the cashier received the letter a controlling fact in this case; but as all evidence which tends to illustrate even circumstantially the truth of any contention of either party to a case is competent, and as the witness stated that he had the letter in court, we think the defendant had the right to have its date shown, for the reason that the date might be a circumstance corroborative of his testimony as to the time when Fite, the cashier, refused any further extension, and might have tended to discredit Fite's statement upon that subject.    The witness was under cross-examination, and it was the right of the opposite party to make that cross-examination a thorough and sifting test of the witness's credibility. It can readily be seen that if it had appeared, from the date, that the letter was actually written after the time that Rylee insists the second agreement between the cashier and himself was entered into, this circumstance would have been strongly corroborative of the testimony of Rylee, delivered later in the trial.

2. It is insisted that the verdict is contrary to evidence, in that, the defendant having pleaded that he had deposited with the bank a large amount in notes as collateral to secure the note sued on, and asked the court to direct that it be returned to him by the bank in the event it was found that his indebtedness had been paid, and having proved this plea by undisputed evidence, the judgment of the court should have been so molded as to require the bank to return to the defendant his collateral. The judge found that the defendant owed the bank nothing, and entered judgment in his favor for the cost. There was no evidence to contradict the fact that the defendant had paid the bank all that it claimed; and it was therefore error not to enter a judgment directing that the defendant's collateral in the hands of the bank be returned to him. The answer of the defendant upon this point was in effect an action of trover, and the undisputed proof entitled him to recover his collateral notes, even though the evidence would not have authorized him to recover an alternative verdict in damages. It is true that city courts have no original jurisdiction in equity, and can not grant affirmative relief in equity. But they can, in many cases, mold their judgments in accordance with equitable principles. In the present case, however, there was no need to proceed according to the rules of equity; because any one who has deposited a pledge or collateral with another as security for an indebtedness due by himself to the latter may (if the pledge is refused him after the debt which it was pledged to secure has been fully paid) recover possession of the collateral by trover. This being so, we think that where it is properly pleaded in defense of an action upon a note that the indebtedness was one for which personal property was pledged, and that it was fully paid, and the return of the collateral is asked, the defendant would be entitled to a judgment awarding him possession of the pledge or collateral.

3. We confess that the notice of the intention to ask judgment for attorney's fees is liable to be misleading to one ignorant of the law, who is notified that a judgment for attorney's fees will be asked unless he pays the note and interest thereon within ten days from the date of the notice. If one should receive a notice dated August 24, notifying him that a judgment for attorney's fees will be taken unless the principal and interest, amounting to a large sum, is paid by September 4, when as a matter of fact the return

day is September 18, and he has two weeks longer in which to make his arrangements to pay, the notice would be apt to create a feeling of hopelessness, which might yield to successful effort if the debtor knew that under the law he had two weeks longer in which to raise the money. We say this is a possibility if the person who receives such a notice is ignorant of the law. However, by a presumption, theoretical in its nature, no man is ignorant of the law or of any part of it; every man knows the law even to the minutest details of matters of procedure. The notice in the present case can not be held insufficient; it is as follows:

"Commerce, Ga., August 24th, 1907.

"Mr. E. H. Rylee, Statham, Ga.

"Dear Sir:—I write again to inform you of the fact that I hold, for immediate collection, the waiver note which you gave to the Bank of Statham, of Statham, Ga. As you know, the note is dated 4th day of April, 1907, due 4th day of May, 1907, for $2,304.19 principal, with interest at eight per cent. after maturity, and no credits whatever on said note, making a total, principal and interest, of $2,360 now due. Your note also calls for ten per cent. attorney's fees in addition to the principal and interest, and these attorney's fees are now collectible by law (see Acts of 1900, page 53), provided the holder of the note gives you ten days' notice of his intention to file suit on said note. I hereby give you notice, as required by above-cited act, of my intention to bring suit against you on said note, said suit to be filed in the city court of Jefferson, in Jackson county, Georgia, returnable to the next October term (1907) thereof, after you have received the ten days' notice as required by law. I am sending you this written notice by registered letter, and am keeping an exact copy thereof, so that I can show by the return register receipt, duly signed by you, the exact date upon which you received this written notice. Immediately after the expiration of ten days from the receipt of this written notice by you, I will file suit against you on said note in the said city court of Jefferson, Jackson county, Georgia, and said suit will be brought against you for the principal, interest, and also for the ten per cent. attorney's fees, unless the principal and interest ($2,360) now due is paid to me before the end of ten days. Hoping to hear from you within ten days, I am,          Yours very truly,

R. L. J. Smith, Atty. for Bank of Statham."

This notice contains all that is essential, in that it states the note upon which attorney's fees will be claimed, and the court, and the term thereof, to which the suit will be filed. It is more specific than is necessary. Although it relies upon the presumption that the maker of the note knows the law, and therefore can not be misled by the statement that the right to require attorney's fees will attach if the note is not paid in ten days from the notice, instead of that it will attach if payment is not made before return day, this notice (in order to save the debtor from the trouble, which so many of us experience, of not knowing where to find the law that we know) "puts its finger upon the spot," and cites the debtor to the statue, where he can compare his knowledge of the law with its very letter.

4. As pointed out in *Kelley* v. *Farmers and Merchants Bank,* 6 *Ga. App.* 691 (65 S. E. 706), where the creditor holds collateral notes, there is a difference between the principal debt and the attorney's fees which may be allowed thereon, which affects the debtor's rights and liability. . As well pointed out by Chief Judge Hill, if the holder of collateral which might have been collected before the giving of notice of intention to claim attorney's fees, or before the return day, is not altogether as diligent as he might have been, nevertheless, if the collections, when made, are applied to the reduction of the principal debt, the debtor suffers no injury. On the other hand, if the holder of collateral does not use ordinary diligence to collect it when due, and if, by reason of the lack of ordinary diligence on his part, collateral notes in his hands and which he is bound to collect are not collected and applied to the reduction of the pledgor's indebtedness prior to the return day, the debtor is damaged by reason of the creditor's act. The creditor's right to ask attorney's fees in some amount is created by the proof that he has given the notice required by the statute; but even after that, there may be circumstances which will require the introduction of proof upon his part to fix the amount to which he may be entitled. Where the stipulation is that the debtor will pay reasonable attorney's fees, it has been uniformly held that the plaintiff must prove what amount or per cent. would be reasonable; and so, in a case where it appears that the creditor holds collateral notes of an amount more than sufficient to discharge the debt, as we held in reversing the judgment of the trial court in the *Kelley*

case, supra, the creditor will not be permitted to collect attorney's fees upon such amount of the collateral as he might by the exercise of ordinary diligence have collected before return day.   The provision in favor of the creditor (which is an exception to the general rule that declares void all contracts to pay attorney's fees in addition to interest) is in the nature of liquidated damages, and the law will not permit the holder of collateral, who has not merely the power but also the duty to collect and appropriate the proceeds to the payment of his debt, to damage the defendant by subjecting him to attorney's fees, thus profiting by his own wrong and enjoying the fruits of his own negligence.   If a creditor holds collateral he is a bailee, entrusted with the agency of collecting it when due, if it be promissory notes, and of applying the money forthwith on the indebtedness for which the notes are pledged. When the evidence shows that the creditor is in possession of collateral, he must, in order to make out a case entitling him to damages against his bailor, prove that he has exercised ordinary diligence.   He is the plaintiff as to attorney's fees as well as to the principal and interest; and, as there is no presumption that a bailee does or does not use ordinary care, he must make it appear, in order to recover attorney's fees, that the notes in his hands as collateral, especially where they apparently amount to a greater sum than is necessary to discharge the debt, were not collectible before the return day, either because the collateral notes were not due or because, by reason of the insolvency of the makers, or for some other reason, they could not by ordinary diligence have been collected.   In the present case, the collateral notes pledged for securing the payment of the note upon which the suit was brought amounted to several hundred dollars more than the defendant's note.   If, by ordinary diligence, the plaintiff could have collected these notes before maturity of the defendant's indebtedness, it was its duty to do so.   There is no presumption, we think, nor any proof to the effect that it was ordinarily diligent, or that there was any reason why the collateral notes were not sooner collected. There was nothing in the present case to show that the pledgee used any diligence in collecting them, or that they could not be collected by ordinary diligence.   There is no evidence nor any presumption one way or the other as to the time when they fell due. From our knowledge of such matters, we would think that gen-

erally the inference that the maturity of the collateral was coincident with or antedated the maturity of the defendant's note was rather to be indulged than that the date of payment of his note preceded the maturity of the collateral. If the maturity of collateral notes precedes the maturity of the note which they are pledged to secure, the holder has it within his power to collect them on or before the maturity of his debtor's obligation. But if the maturity of the note secured by the collateral precedes that of the collateral notes, he knows in advance that in the event of the nonpayment of the principal note at maturity, he would be powerless to avail himself of the collateral, even by suit; for unless the circumstances are extraordinary, the maker of a note can not by law be compelled to pay it before maturity.

In the present case Rylee's note was past due, but, inasmuch as the bank was secured by collateral, its right to attorney's fees would depend not alone upon the maturity of its note, but also upon the maturity of the collateral notes, which it was bound to collect if ordinary diligence could accomplish collection. And the bank would not be entitled to attorney's fees if the collateral notes maturing before the return day could have been collected. If a portion only could have been collected, its right to attorney's fees would be reduced pro tanto. In the *Kelley* case, supra, Judge Hill well draws the distinction between the effect as to the principal debt and the effect as to attorney's fees, where the pledgee does not exercise that diligence which the law requires; and points out clearly that as to the principal debt the pledgor may eventually suffer no loss by reason of the pledgee's failure to promptly collect collateral; for the reason that the principal of the collateral, when collected, will be applied to principal, and the interest, if any, will be applied to interest. In a legal sense there can be no loss as to principal and interest, if the principal and interest of the collateral are applied, whenever they can be collected, in extinguishment of the debtor's debt. But where the holder of the collateral is attempting to fix liability for attorney's fees upon his debtor, he must show that it was not within his power, by the exercise of ordinary diligence, to diminish the damages,—that ordinary diligence to collect the collateral was exercised on his part, and that the failure to collect has not resulted in any damage to his debtor. In the *Kelley* case we set aside the judgment for attorney's fees for the

sole reason that it appeared, in the evidence, that the collateral could have been collected, not merely before the return day of the suit, but before the principal note matured. In the present case it appears that one of the collateral notes was collected by the bank before return day, and a calculation of the amount due upon the note and of the several payments shows that attorney's fees of over $250 must have been allowed the plaintiff. Inasmuch as the evidence was insufficient to show that the bank, as the pledgee of the collateral notes, could not have collected any of the collateral before return day, we do not think the judgment was authorized by the evidence.

5. One of the questions raised by the record does not appear to have been heretofore presented in this State. In the case of *Mt. Vernon Bank* v. *Gibbs*, 1 *Ga. App.* 662 (58 S. E. 269), we held that attorney's fees, where the proper notice was given, were to be computed, if payment was made after return day, upon the amount of principal and interest at the time of payment. In that case we dealt exclusively with a situation in which the payment was made after return day, and the sum paid was admitted by the defendant to be the amount he owed; and the creditor had made no conditional agreement to release his right created by the notice. The method of fixing the amount was not before us, nor was any question in regard to the plaintiff's waiver of his right to collect attorney's fees presented in that case; in fact it did not appear that the plaintiff had any connection with the collection of the principal and interest. Upon the question as now presented, we have no hesitation in holding that the notice required to be given, for the sole purpose of attaching liability for attorney's fees upon the maker of a note in which attorney's fees are promised, has no bearing whatever upon the amount for which the defendant may finally be liable. Where there is a judgment in favor of the plaintiff, and a percentage is stipulated in the contract, and there are no intervening payments, it is clear that the amount of recovery of attorney's fees would be determined by the judgment, including interest if any. If the plaintiff recovers only a part of the amount of the note or other contract which stipulates for attorney's fees, the attorney's fees are proportionately diminished. For example, suppose A brings suit against B on a note for $10,000, containing the usual attorney's fees clause promising to pay ten

per cent., the consideration of which is certain machinery, and B files a plea of partial failure of consideration to the extent of $5,000. Now, if on the trial the jury should bring in a verdict in favor of the plaintiff for only $5,000, it is plain that a judgment could not be rendered in favor of A for attorney's fees of an amount greater than $500, although the note stipulates for attorney's fees of ten per cent. upon the amount promised to be paid, which in the supposed case would be $1,000. *Livingston* v. *Salter*, 6 *Ga. App.* 377 (65 S. E. 60). Or if, before the trial, the accrued interest amounted to $800, and the jury found the failure of consideration to amount to only $4,000, the attorney's fees would be ten per cent. upon the verdict of $6,000 principal and $800 interest, or $680. The amount of attorney's fees in any case which is litigated must be fixed by the amount of the plaintiff's recovery. In several States this principle is recognized in rulings which require a separate suit to be brought for the attorney's fees, though included in the original contract. Another supposable case may be given, which tends to show that while the right to recover some amount of attorney's fees is fixed by the failure of the debtor to pay whatever amount he may justly owe before the return day, the amount is necessarily dependent upon the amount of his liability upon the contract as determined by the trial. A brings suit against B on a note for $10,000, containing the usual ten per cent. attorney's fees clause, and gives the required notice; the note bears interest at the rate of eight per cent. from maturity, and has just become due; consequently there is no interest on the return day; the case is continued for several terms, and tried several times, and carried more than once to the court of last resort, and finally A recovers a judgment for $10,000 as principal, and $3,200 for interest. He would be entitled to recover judgment for $1,320 attorney's fees. In the present case we are not prepared to say how the learned trial judge viewed the question of attorney's fees, but inasmuch as there was a judgment for the cost in favor of the defendant, it necessarily follows that the judgment finding against the demand of the plaintiff for attorney's fees resulted either from the fact that the judge was of the opinion that the plaintiff was not entitled to recover attorney's fees, under the evidence as to an agreement to remit the attorney's fees, or that he reached the conclusion that if the defendant owed attorney's fees he had already

paid them. If the judgment was based upon a finding to the effect that attorney's fees had been paid, there should have been at least a finding in favor of the defendant for the amount of $8.62 against the plaintiff, because, deducting from the face of the note $71 usury, which the plaintiff admitted to be included in the note, allowing interest on the remainder at eight per cent. per annum, and deducting the credits on the note as partial payments, it is evident that the defendant has paid more than the entire principal, interest, and attorney's fees upon his obligation, and there should be a judgment for this amount in his behalf. This is true if there is omitted (for the reason that its value was not proved) one bale of cotton which was applied by the bank to his indebtedness. If the plaintiff was not entitled to attorney's fees for the reasons which we have stated in the fourth division of this opinion, or because there was a waiver of the right to collect, then the defendant should have had judgment for more than $200 for payments upon the note in excess of the principal and interest due by him. So that, in any view of the evidence, the finding is not supported. It is insisted, however, that as the defendant paid after the return day several of the amounts which were credited on the back of his note, his liability for attorney's fees, created by the notice, could not be extinguished or destroyed as to them.

6. As we construe the act of 1900, the service of the notice by the plaintiff simply clothes him with a right which he otherwise would not possess. In other words, it fixes a right in him by reason of which he may collect attorney's fees in whatever amount may be due him, which otherwise he could not collect. But the right which the plaintiff thus acquires, like any other right, may be waived; and in the present instance the defendant testifies to a positive agreement by which he was relieved from payment upon two separate occasions. The plaintiff does not deny this. It is undisputed that the cashier of the bank made a positive agreement with the defendant that if he would pay his note before the first Monday of court, the attorney's fees would be remitted. On the first Monday of court the defendant procured from the bank a further extension of this time; the bank agreeing that the former stipulations by which the bank agreed to release the payment of attorney's fees would be extended for the convenience of a third party. Under the circumstances it is perfectly plain that as to

the payment made by the defendant from the proceeds of the cotton purchased by Camp, the bank waived the recovery of attorney's fees. As to the credits upon the note, which were derived from various collaterals belonging to Rylee, for reasons already stated the plaintiff had a right to insist upon his attorney's fees after the notice had been given (unless the collateral could have been collected sooner), or to waive the benefit conferred by the liability of the defendant.

It is to be presumed, from the acceptance of the payments, in the light of the testimony in regard to the prior agreement, that the collection of attorney's fees was waived by the bank; and it appears that all parties were satisfied, until Mr. Fite, the cashier of the bank, received a letter from the attorney for the bank. In a case where the plaintiff has gone to the trouble to fix his right for attorney's fees, he may still waive the right to collect them. If a creditor accepts payments from a debtor with the understanding that the attorney's fees are to be paid, then the defendant would not be relieved of the payment of attorney's fees. But if the construction placed upon the contract by the defendant was known to the plaintiff, and the latter was aware that the defendant was acting upon that construction, that construction must prevail; and it is evident that when the cashier accepted the payments, he was conscious of the fact that the defendant thought he was paying the principal and interest in order to be relieved from the payment of attorney's fees.                              *Judgment reversed.*