### 8298. McNATT *v.* CITIZENS & SOUTHERN BANK.

1. Where process dated May 3 required the defendant "to be and appear at the next superior court of Toombs county on the 4th Monday, that being the 24th day of May next," this meant the first 24th day of May after the date of the process, and not the 24th day of May of the next year.

2. Where a note sued on provided that "Should [the payee] at any time deem it necessary for the protection or enforcement of any of its rights hereunder to employ an attorney or attorneys, or should this paper be placed in the hands of an attorney after default for collection or enforcement, I hereby agree to pay all fees and costs that may be incurred by said [payee], which fees and costs shall become a part of the principal debt secured hereby, and may be paid by said [payee] from the proceeds of any sale or sales as above," and where the petition asked for "ten per cent. of the said principal and interest as attorney's fees," it was not demurrable on the ground that, under the contract, the amount of attorney's fees sued for was not recoverable. Under the petition reasonable attorney's fees, not exceeding the amount sued for, were recoverable.

3. Recoupment, as a defense, must spring out of the contract upon which the plaintiff sues, and is confined to that. Any cross-obligation or independent covenant arising under that contract would be available as a defense; but the defendant can not by plea recoup under a different and independent contract.

DECIDED AUGUST 3, 1917.

Complaint; from Toombs superior court—Judge Hardeman. August 29, 1916.

*W. L. Wilson, Hines & Jordan,* for plaintiff in error.

*Adams & Adams, E. J. Giles,* contra.

BLOODWORTH, J. The Citizens and Southern Bank brought suit against James McNatt on a note due June 15, 1914, for the principal sum of $67,449.81. The defendant entered a special ap-

pearance for the purpose of moving to dismiss the petition, and filed a demurrer and a plea, and an amendment to the plea. We will discuss the motion, the demurrer, and the amendment to the plea in the order in which they were made.

1. The copy of the process attached to the petition is as follows:

"The defendant, James McNatt, of the said county of Toombs, is hereby required, personally or by attorney, to be and appear at the next superior court of Toombs county on the fourth Monday, that being the 24th day of May next, then and there to answer the plaintiff on the merits of the foregoing petition, as in default of such appearance the said court will proceed as to justice shall appertain. Witness, the Honorable R. N. Hardeman, judge of said superior court, this 3rd day of May, in the year of our Lord one thousand nine hundred and fifteen.

                    "Adams & Adams, plaintiff's attorneys.
"Dess Gray, Clerk S. C. T. Co."

The defendant moved to dismiss the petition and process, "because the process attached to said petition is dated May 3, 1915, and this defendant is thereby required to be and appear at the next superior court of Toombs county, on the fourth Monday, that being on the 24th day of May next, that is on the fourth Monday, being the 24th day of May, 1916, when said process should be returnable to the May term, 1915, of said court." The next term of Toombs superior court after the process was issued would be held on the 4th Monday in that month. This motion was properly overruled. "The defendant was bound to know when the 'next term' of the superior court of his county would be held, and the fact that the notice incorrectly named the date of the term did not render it invalid." *American Bonding & Surety Co.* v. *Adams*, 124 *Ga.* 510 (1-*b*) (52 S. E. 622). "The word 'next' in a writ of venire issued June 12, 1908, commanding the sheriff to serve the writ upon the jury commissioners, and requiring them to summon the jurors to appear before the common pleas court held on the 22d of June next, at 10 o'clock, etc., meant the next 22d day of June in that year, especially in view of the fact that the next term of the court after June 12th was June 22nd." State v. Washington, 82 S. C. 341 (64 S. E. 386); Osgood v. Hutchins, 6 N. H. 374-384; Gibson v. Laughlin, Minor, (Ala.) 182; Fosdyck v. Per-

rysburg, 14 Ohio St. 472-480. In the decision in the case of *Richmond & Danville R. Co.* v. *Benson*, 86 *Ga.* 206 (12 S. E. 357, 22 Am. St. R. 446), we find the following: "In the case of *Williams* v. *Buchanan*, 75 *Ga.* 789, the original process required the defendant to appear 'on the second Monday in April next,' but by mistake the copy process required him to appear 'on the second Monday in December next.' The process was dated December 28th. The following April was the time of the regular term, and no term of the court was to meet in December. It was held that service of this declaration and copy process was sufficient to put the defendant on notice of the case. Jackson, C. J., in the course of the opinion said: 'When a man knows that he is sued, and is served with a copy of the declaration which tells him what he is sued for and in what court, it would be well for him to step to the clerk of that court and find out something about any little mistake in the process, and attend at the first term to take advantage of the mistake, if it would avail him, or have it corrected and put off a term, if the court so decided; especially would it be prudent not to delay action until after trial term, verdict, judgment and execution, and then set up the mistake of the clerk, which must have been known to him the moment he read the copy declaration and process handed him by the sheriff, and called to mind the fact, known to everybody in Sumter county, that the superior court met in April and not in December.'" See also *Ware* v. *Lamar*, 16 *Ga. App.* 560 (85 S. E. 824).

2. The defendant filed a demurrer, but in his brief discussed those portions thereof only which attacked the paragraphs of the petition asking for attorney's fees, the demurrer alleging that no facts were stated in the petition which entitled petitioner to ten per cent. on principal and interest as attorney's fees, and that no copy of the notice given to defendant as to attorney's fees was attached to the petition. Where a note provides for attorney's fees, and the holder seeks to recover fees with principal and interest, and alleges the giving of the notice required by law to enable him to recover such fees, it is not necessary that a copy of the notice be attached to the petition. It is sufficient if the petition shows (as was done in this case) that "the holder of the obligation sued upon, his agent, or attorney notifies the defendant in writing, ten days before suit is brought, of his intention to bring

suit, and also the term of the court to which suit will be brought." Civil Code of 1910, § 4252. "Every citizen is presumed to know the law; and the notice which the statute requires to be given in order to fix upon the defendant liability for attorney's fees (Acts 1910, p. 53) is sufficient if it states the contract upon which suit will be brought, the term of the court to which the suit will be filed, and refers specifically to the act above cited." *Rylee* v. *Bank of Statham*, 7 *Ga. App.* 490 (3) (67 S. E. 383). The note provides as follows: "Should said bank at any time deem it necessary for the protection or enforcement of any of its rights hereunder to employ an attorney or attorneys, or should this paper be placed in the hands of an attorney after default for collection or enforcement, I hereby agree to pay all fees and costs that may be incurred by said bank, which fees and costs shall become part of the principal debt secured hereby, and may be paid by said bank from the proceeds of any sale or sales as above."

In the petition the plaintiff asked for ten per cent. of the principal and interest as attorney's fees. Under this provision of the note the defendant claimed that this was not allowable, and that this part of the petition should be stricken, as the plaintiff, under this provision, could recover reasonable attorney's fees only. There was no error harmful to the defendant in refusing to strike this part of the petition, because at last it was a question of proof as to what would be reasonable attorney's fees, and under the petition the plaintiff could recover whatever amount was shown to be reasonable as fees up to, but not in excess of, ten per cent. However, as no attorney's fees were allowed, this ruling could not have harmed the defendant.

3. The defendant filed a plea denying the indebtedness, and offered an amendment, which the court refused to allow; and the defendant contends that this ruling was erroneous. An examination of the plea will show that it is intended as a plea of recoupment. It is couched in the language of a plea of recoupment, and alleges that because of the failure of the plaintiff to discharge its duty, and in violation of its cross-obligations, this defendant has been damaged in a stated sum, which he asks to be allowed to recoup against the plaintiff, and prays judgment for said sum against the plaintiff. Under our law, the plea of recoupment must grow out of the cross-obligations of the plaintiff under the

contract upon which suit is brought. Civil Code (1910), § 4350. In the case of *Hamilton* v. *Granger's Life & Health Insurance Co.,* 65 *Ga.* 752, Justice Crawford said: "Recoupment as a defense must spring out of the contract upon which the plaintiff sues, and is confined to that. In this case the suit was brought on the promissory note, and any cross-obligation or independent covenant arising under that contract would be available as a defense; but it is sought by the plea to recoup under another distinct, independent, and antecedent contract. This can not be done." In the case at bar the suit was upon a note, and the facts upon which the plea of recoupment were based did not spring out of any cross-obligation of the plaintiff, embraced in the note sued on, but dealt with a distinct and independent matter. It is based upon what is called a trust deed, and alleges that this trust deed was made to the bank as trustee to secure an issue of bonds. It admits that the creator of the trust deed, "said Oconee River Mills, covenanted and agreed" to insure its building, etc., and to deposit the policies with the plaintiff, as trustee, which policies were to be made payable to the plaintiff, and that the "Oconee River Mills agreed to pay the premium thereon and keep the same in full force and effect in a sum equivalent to the bonds secured by said deed." This deed was between the Oconee River Cotton Mills and the plaintiff only, and the defendant is not a party thereto. The plea further avers in general terms that it was the duty of the plaintiff as said trustee, and the plaintiff as such trustee undertook and agreed, in behalf of the holders of the bonds, to keep the policy in full force and effect by obtaining the necessary, customary, and proper agreements from the insurance company, permitting the establishment to be and remain idle. It does not, however, set forth any contract of this sort by the bank as trustee, or the consideration or terms thereof, and does not in any way withdraw the admissions, already noticed, to the effect that the Oconee River Mills was to look after the insurance and keep it up. In the case of *City of Moultrie* v. *Schofield's Sons Co.,* 6 *Ga. App.* 464 (65 S. E. 315), the first headnote is as follows: "Pleadings are construed most strongly against the pleader, and where a plea both admits and denies the execution of a contract which binds the pleader and the adverse party to mutual obligations, the admission, and not the denial, must prevail." See also *White Sewing Machine Co.* v. *Horkan,* 7 *Ga. App.* 283 (2) (66 S. E. 811).

The plea further alleges that if the plaintiff, as said trustee for this defendant and the other bondholders, had, in accordance with its agreement, kept the policy in force by obtaining an extension agreement, plaintiff would have been able to collect the amount of the policy; and if it had been collected, the bank, as pledgee, would have received from the bonds more than enough to pay the note; and that, by reason of said failure of the plaintiff to keep said insurance in force, "this defendant was and is damaged in the sum of forty-one thousand dollars ($41,000.00), which loss and damage arose out of the breach of the cross-obligations of plaintiff to this defendant under said trust deed, and under the contract between the plaintiff and this defendant whereby the bonds and stock of said Oconee River Mills were deposited with and pledged to secure the note sued on in this case," and that by reason of the failure to keep up said insurance said policy became null and void, and the plaintiff and the Oconee River Mills were unable to collect the full amount of said loss, but, on the contrary, compromised and settled with the insurance company for the sum of $75,000. The pleading concludes with the following: "By reason of the failure of plaintiff to discharge its duty in the above respects, and by reason of the violation of its undertaking and agreement, and in violation of its cross-obligations to this defendant, this defendant has been damaged in the sum of $41,000.00, which he recoups against the claim of plaintiff, and prays judgment for said sum against the plaintiff."

From the foregoing it will be seen that the allegations of the plea seeking to set out recoupment grow out of a separate and independent contract from the note sued on, and the plea is therefore not good as one of recoupment.

The other and general allegations of the plea, as to damage to the defendant, based upon the alleged violation of duty in obtaining an extension of insurance, and thereby saving loss to the defendant, when considered in connection with the particular facts of this case, and especially in connection with the statement in the plea that the Oconee Mills agreed to insure the building, pay the premiums, and keep the insurance of full force, were properly stricken with the other portions of this amended plea.

*Judgment affirmed. Broyles, P. J., and Jenkins, J., concur.*