## 48421. BUFFINGTON v. McCLELLAND.

HALL, Presiding Judge. Plaintiff-appellee McClelland is an attorney at law who previously represented appellant Buffington in litigation. Buffington refused to pay McClelland's fee; McClelland sued to collect and obtained a jury verdict reversed on appeal in *Buffington v. McClelland,* 125 Ga. App. 153 (186 SE2d 550). Upon a new trial, McClelland again received a jury verdict, and Buffington again appeals raising 12 enumerations of error.

Having been previously represented by McClelland in other matters, Buffington retained McClelland without a specific fee arrangement to defend him against a claim of one Ebener for a $60,000 recovery plus an accounting said to be due Ebener as his share of the profits of his former partnership with Buffington. The matter was initiated in 1956 and proceedings before an auditor and other matters caused the case to continue over 7

years before it was concluded in 1963 by Buffington's payment of a $7,000 settlement. During this time McClelland sent various bills "on account" and on conclusion sent a final bill which was not paid. The amended complaint sought recovery of an alleged balance due of $2,350. Upon the new trial McClelland amended his complaint to seek a balance due of $12,350, which reflected an increased valuation of services in quantum meruit at $15,000 minus adjustment for sums paid, and which McClelland explained as an amendment to conform the pleading to the evidence adduced at the first trial. The jury rendered a verdict for McClelland for $10,000, and Buffington appeals.

1. Enumerations one, two and four, asserting error in overruling the new trial motion, the motion for judgment n. o. v., and the motion for directed verdict on grounds that McClelland's evidence was not sufficiently specific to support a recovery, all urge the general grounds. Buffington strongly urges that McClelland's records, which never purported to be strictly accurate time records, are insufficient to enable him to recover. A careful review of the trial record, comprising some 400 pages, shows that there was adequate evidence to support the verdict of the jury, and that such evidence was sufficiently specific to allow the award without undue guesswork.

McClelland's showing of his services rendered and his opinion of their bearing on the outcome of the case included the following evidence: McClelland testified that in approaching him Buffington apprised him of his receipt of a demand letter from Ebener claiming to be due as a former partner a percentage of Buffington's profit in the mechanical contracting business and of Buffington's position that nothing whatever was owed Ebener; during about a year through correspondence and conferences with Ebener's attorney to go over the books and records, McClelland negotiated toward a settlement which he then concluded could not be reached; Ebener sued; McClelland filed "answers," "defensive pleadings," and "demurrers"; "hearings . . . on the various motions, demurrers and legal contentions of the parties that went on over a period of some several months . . ." resulted in McClelland's compelling Ebener to list the individual jobs on which he claimed he was owed a recovery; this list was some 60-100 jobs; in light of the increasing complexity of the suit the trial judge appointed an auditor; the auditor called meetings and conferences over a period of several weeks between McClelland and opposing attorneys to go over the pleadings and

make plans; the auditor determined first that they would have evidence on the question whether Ebener was a partner or an employee; seven separate hearings before the auditor were held from August 22, 1959 to October 6, 1961 and the time consumed in each was in evidence; these hearings yielded 514 pages of testimony by witnesses, and also necessitated the taking of depositions of Buffington and three witnesses who could not be present; numbers of conferences were required between Buffington and McClelland, and Buffington's employees and McClelland, plus the effort of going through Buffington's books and records for several years, and discussions and conferences were held with his bond representatives who were interested in the effect of the pending suit on his financial strength; to determine Buffington's true profit margin which became an issue in the case it was necessary to investigate the overhead of his entire office, since records did not allocate it to separate jobs; McClelland was required to gain familiarity with Buffington's methods of accounting, to confer with his bookkeeper and certified public accountant, and with his wife who was carried on the payroll and who was claimed by Ebener to perform no services and not to be a legitimate item of overhead; in connection with the hearings McClelland submitted briefs of law from time to time, and extracted parts of the witnesses' testimony to support his contentions; he filed a motion for nonsuit; the auditor ruled that Ebener and Buffington were partners, and that Ebener was due his percentage of profit on jobs on which he was the estimator even though they might not have been finished until after his departure, so this ruling required investigation into additional jobs that were not completed until 1959; the auditor then found that Buffington owed some $15,000 to Ebener and he reported the same to the trial judge; McClelland filed exceptions of some 30-40 pages as a result of which by "mathematical computation and allocation of the cost" he succeeded in reducing the findings about $4,000 to $11,000, and judgment was entered by the trial judge for that amount; McClelland moved for a jury trial as to the exceptions, requiring briefs of law, argument and further hearings in the court itself and not before the auditor; the motion was overruled; McClelland prepared a bill of exceptions to the Supreme Court, which necessitated review of the entire record, pleadings, evidence, etc.; the other side offered to settle for $7,000; numerous conferences were held between Buffington and

McClelland concerning whether settlement or appeal was preferable; to determine their chances on appeal McClelland suggested an evaluation of the record as it would appear to an outsider by an outside attorney; he obtained the services of Merrill Collier, who reviewed the material for a week; three lengthy conferences were held between Collier, Buffington and McClelland, usually at night, and they opted for the $7,000 settlement in preference to the appeal; Buffington required Ebener as part of the settlement to agree to a statement that he had never had any connections with Buffington at all, and McClelland drew a complete and detailed settlement agreement of this unusual kind, plus a dismissal agreement; the settlement figure was paid and the suit dismissed; McClelland by review of his daily calendars over the 7 years involved estimated his time at 214 1/2 hours; his opinion of the value of his services was from $7,500 to $15,000; he acknowledged $2,650 already paid; his claim was based on actual time involved, complexity of the litigation and the results obtained; he testified it was the most complicated suit he had had in his 30 years of practice; James Flemister and Merrill Collier, both attorneys, were qualified as expert witnesses and both opined that the value of the services was $15,000; Paul Webb, Ebener's attorney in the suit, testified for McClelland that he (Webb) had not obtained the result in the Ebener suit that he had hoped for; the entire record compiled in the Ebener case was introduced into evidence.

Buffington urges that in fixing McClelland's recovery the jury necessarily had to engage in guesswork and speculation of a type not allowed in the fixing of damages. It is true, as Buffington maintains, that "Where a party sues for specific damages he has the burden of showing the amount of the loss claimed in such a way that the jury may calculate the amount of the loss from the data furnished and will not be placed in a position where an allowance of the loss is based on guesswork." *Thomas v. Campbell,* 126 Ga. App. 675, 676 (191 SE2d 619), quoting *Williams & Templeton v. Brewer,* 93 Ga. App. 603 (1) (92 SE2d 586). However, the facts of the cases urged by Buffington do not support the conclusion he seeks, that this rule precludes McClelland's recovery here. *Thomas v. Campbell,* supra, and *Big Builder, Inc. v. Evans,* 126 Ga. App. 457 (191 SE2d 290) both dealt with the computation of damages for failure to repair real property. *Williams & Templeton v. Brewer,* supra, considered computation of damages for trespass and illegal cutting of

timber; *Andrews v. Commercial Credit Corp.,* 129 Ga. App. 294 (199 SE2d 383) considered a claim for a percentage "of each deal" said to be owed under a reserve contract; *Lansdale Clothers, Inc. v. Wright,* 217 Ga. 817 (125 SE2d 502) involved a claim for goods delivered when no value of the goods was shown. *Woodruff v. Trost,* 73 Ga. App. 608 (37 SE2d 425) does deal with the quantum meruit claim of Trost, an accountant, for his professional services, and in Count 1 this court held the jury verdict for the accountant not authorized by the evidence because "there is no evidence of the work's bearing on the results obtained," *id.* at 611, where plaintiff had assessed his fee on the basis of work done and results achieved. In the present appeal, however, there is ample evidence that the work done bore directly on the results obtained. Also, on Count 2 of the *Woodruff* case, this court upheld a jury verdict of $5,000 for the accountant's idea of making an investigation, his writing a few letters, and his obtaining recovery of 1,200 shares of stock worth $190,000 and $6,800 in dividends, even though he proffered no time records to substantiate his claim.

In suits upon quantum meruit, an amount representing the value of professional services is for the jury to determine. *Marshall v. Bahnsen,* 1 Ga. App. 485 (1) (57 SE 1006). The services detailed by McClelland were described with even greater specificity than those in *Deutsch v. Haas,* 55 Ga. App. 463 (190 SE 637), which we held adequate to support the attorney's recovery there. McClelland's evidence was ample to withstand the motion for directed verdict and to authorize the verdict, and the verdict will not be disturbed on appeal.

2. Enumeration three, alleging error in the overruling of the motion to limit McClelland's damages to the amount prayed for in the first trial has been abandoned here because not argued nor supported by authority. *Georgia Farm Bureau Mutual Ins. Co. v. Mitchell,* 126 Ga. App. 640, 643 (191 SE2d 557); *Young v. State,* 125 Ga. App. 204 (186 SE2d 805).

3. Enumerations five, six and seven assert error with respect to the testimony of the witness Merrill Collier in three respects: in allowing him to answer an improper hypothetical question concerning the value of McClelland's services; in allowing him to testify over Buffington's claim of an attorney-client privilege; and in refusing to strike his testimony. Buffington points to no fact set forth in the hypothetical question which is unsupported by the evidence, and our review of the question shows none.

Accordingly, the enumeration is without merit. With respect to the claimed attorney-client privilege, as will be discussed in a later section of this opinion, Collier testified that he was employed by McClelland to render services to McClelland, and he sent his bill to McClelland, although the evidence showed that Buffington actually paid it at McClelland's request. In any event, the attorney-client privilege recognized in Code Ann. § 38-418 (2) does not encompass matters of which the attorney has or gains knowledge through some source other than the communications of his client in preparation for litigation. If he has knowledge from another source, testimony concerning that is proper. Code § 38-1605; *Skellie v. James,* 81 Ga. 419 (2) (8 SE 607); 2 Encyc. of Ga. L., Attorney and Client, §§ 84, 108, 109. Collier's testimony concerned his evaluation of McClelland's services on the basis of the record which had been made in the case and the pleadings and briefs of parties, which he reviewed at McClelland's request to evaluate an appeal. None of this information was confidential and documents of this type are matters of public record. No privilege is involved and the objection to the testimony on this ground is without merit.

4. Enumerations eight and nine assert error in the court's allowing James Flemister, an attorney, to answer a hypothetical question eliciting his opinion of the value of McClelland's services, and in refusing upon motion to strike his testimony. On the merits the alleged errors are without foundation. Though asserting that the question was based on the evidence, Buffington fails to point to any particular in which the question was unsupported, and our review discloses none. This enumeration is without merit.

5. Enumeration ten claims error in the court's restricting Buffington's cross examination of the witness Collier and excusing him as a witness over objection. Specifically, Buffington urges that he was unable to delve adequately into the question of whether Collier was employed by McClelland or Buffington. Review of this portion of the record shows that before the court terminated this line of questioning, Collier had testified six separate times in response to cross examination that he was employed by McClelland; he had testified numerous times that he rendered his services to McClelland and looked to him for payment. The court asked Buffington's attorney what additional questions he desired to ask, and the attorney enumerated only those to which the witness had already given answers. There was no error in refusing to allow additional cross examination to plow

the same ground again.

With respect to the alleged error in excusing Collier as a witness over Buffington's objection, the record shows that the judge excused Collier and terminated the cross examination when Buffington's attorney refused to ask additional questions until the court reporter succeeded in finding a passage of Collier's previous testimony in which the witness made statements concerning his opinion of the relative likelihood that plaintiff or defendant would be in the better position to accomplish a mischievous delay of a lawsuit. Our review of the record shows that such statements were not made in response to a question, but the information to be searched for was a composite of the witness' answers to more than one question, and this testimony appears in the transcript 12 pages prior to the point at which the reporter was instructed to search his notes. In light of the impracticality of the request by Buffington's attorney, his refusal to go on with his questions until the passage was found, and the relative insignificance of the point in the context of the overall evidence, we hold that even if error occurred here, the same was harmless.

6. The eleventh enumeration asserts that the overall conduct of the trial judge was sufficiently unfair to Buffington to have denied him the benefits of a fair trial. We have reviewed the total transcript and the claim is without merit.

7. The twelfth and last enumeration correctly claims error in the court's disallowing the cost of the transcript of proceedings at the first trial as an item of cost of appeal to be recovered by Buffington as a successful appellant on his former appeal of this case. Under this court's decision in *Barnett v. Thomas,* 129 Ga. App. 583 (200 SE2d 327), Buffington is entitled to recover this amount, and the trial court erred in denying his motion to that effect.

8. McClelland's motion to dismiss the appeal on various grounds is denied. Appellant's failure to include a statement of jurisdiction does not deprive this court of jurisdiction and does not require us to grant a motion to dismiss. *Myers v. Johnson,* 113 Ga. App. 648 (1) (149 SE2d 378). In order to raise questions on appeal, it is unnecessary first to include them as grounds for a new trial motion. Code Ann. § 6-702. The former rule of *Hill v. Willis,* 224 Ga. 263 (161 SE2d 281) has been changed by this court's Rule 14 (e): "The enumeration of errors shall be deemed to include and present for review all judgments necessary for a de-

termination of the errors specified." McClelland's motion under Code § 6-1801 for damages for an appeal taken only for delay is denied, as we have reversed that part of the judgment appealed from which denied appellant a portion of his costs on the first appeal.

*Judgment affirmed with direction that the cost of the transcript of proceedings taken at the first trial and transmitted to this court as part of the record on the former appeal be cast against McClelland. Evans and Clark, JJ., concur.*

SUBMITTED SEPTEMBER 13, 1973—DECIDED NOVEMBER 29, 1973— REHEARING DENIED DECEMBER 18, 1973 — 

*Glenville Haldi,* for appellant.
*J. Ralph McClelland, Jr.,* for appellee.