60844. MARRIOTT CORPORATION v. AMERICAN ACADEMY OF PSYCHOTHERAPISTS, INC.

McMURRAY, Presiding Judge.

In the Fall of 1973, American Academy of Psychotherapists, Inc. (the "Academy"), entered into an agreement with Marriott Corporation ("Marriott") whereby it was to hold a convention at Marriott's downtown Atlanta motor hotel during the Fall of 1975. Marriott confirmed by letter that it was "definitely holding space for the 1975 convention," initially projecting 100 guest rooms and various conference rooms for workshops, meetings and meals. Marriott further indicated that it was "open to some flexibility" but requested the Academy to finalize its program at least six months prior to its "arrival date."

During the months that followed, the Academy made various arrangements for its convention and frequently communicated with

Marriott regarding revisions in its original plans. In April, 1974, Marriott reconfirmed the convention reservations. In April, 1975, following another "update" by the Academy, Marriott wrote that there may be some difficulties in handling certain of the requirements for meeting rooms, but concluded, "It appears that you will fit perfectly, and that you can expect good attendance and a good show on our part." As the convention dates approached, Marriott expressed concern regarding the Academy's ability to fill the 100-room quota and informed the Academy that it would be unable to guarantee access to all requested facilities if it did not receive the 100 room reservations at least ten days prior to the opening day of the convention. The Academy met this 100-room requirement by the specified date.

Two weeks prior to the convention's opening day, the Academy's planning committee chairman, a Dr. Brown, became aware that Marriott might not have enough room for its convention. The Academy contends that following a series of telephone calls and meetings over the next three days it was learned that Marriott had booked another much larger convention at its hotel for dates that overlapped with the Academy's convention, and that Marriott consequently might be unable to handle the convention. Eventually, Dr. Brown spoke with Marriott's resident manager and was advised that if the Academy's attendees arrived on the dates they had intended, "they would just stack up in the lobby; that there were no rooms available, and they could not evict the tenants [from the other convention]." Dr. Brown took this word as "final," whereupon, the planning committee arranged to shift the convention to another Atlanta hotel.

The Academy filed suit against Marriott on two counts, Count One for wilful misrepresentation of fact and Count Two for breach of contract. In accordance with the jury's verdict, judgment was entered in plaintiff's favor in the amount of $1,500 in special damages and $5,000 in punitive damages. Defendant appeals. *Held:*

1. Defendant enumerates error in the trial court's denial of its motion for a directed verdict as to Count One of the complaint, wilful misrepresentation of fact. "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." Code Ann. § 81A-150 (a) (Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237; 246, 248). "Only where there is no conflict and a verdict is demanded as a matter of law is it error for the trial court to fail to direct a verdict." *Weatherspoon v. K-Mart Enterprises of Ga.,* 149 Ga. App. 424, 427 (3) (254 SE2d 418).

"The five elements of fraud and deceit in Georgia are: (1) false

representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." *City Dodge v. Gardner,* 232 Ga. 766, 769-770, fn. 1 (208 SE2d 794). Having reviewed the record and transcript, we find that the jury could reasonably conclude from the evidence presented that defendant was aware of its having overbooked the hotel to such an extent as to create a substantial likelihood that it would be unable to meet plaintiff's needs during its convention, and yet defendant continued to represent to plaintiff that plaintiff's convention could and would be handled by defendant as planned by plaintiff. The jury could also find that defendant continued to make such representations with an intent to induce plaintiff's reliance, and that plaintiff did justifiably rely thereon to its damage. "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Code § 37-706.

Moreover, defendant's reliance upon *Brown v. Hilton Hotels Corp.,* 133 Ga. App. 286 (211 SE2d 125), certiorari dismissed as improvidently granted, s.c., 234 Ga. 663 (218 SE2d 78), as controlling precedent that would bar plaintiff's maintenance of Count One is misplaced. The jury was properly charged in the language of Code § 105-302 regarding wilful misrepresentation of a material fact. As noted, the evidence could support a finding of defendant's liability therefor. Clearly wilful misrepresentation of a material fact as herein alleged constitutes misfeasance sufficiently extrinsic to a mere breach of the instant contract to give rise to an independent cause of action in tort. Accordingly, we find no error in the trial court's denial of defendant's motion for a directed verdict as to Count One of the complaint.

2. Defendant further contends that the trial court erred in charging the jurors so as to permit them to award plaintiff punitive damages based solely upon a finding of liability as to Count Two, breach of contract, without finding liability as to Count One, wilful misrepresentation of fact. The court began its instructions by noting that plaintiff sought "to recover damages in basically two areas. One is for the purpose of a breach of a contractual relationship between the two of them. And the second is that they contend that they have been wronged by the defendant and that they are entitled to recover exemplary or punitive damages."

The court discussed forms of evidence, burden of proof, the definition of a contract and the nature of contractual damages. The court then instructed that if the jury found that plaintiff failed to meet its burden of proof regarding breach of contract, it should return a verdict in favor of defendant, but "[i]f, on the other hand,

you should find that the defendant did breach its agreement, or contract, with the plaintiff and that the plaintiff was injured, or damages [sic], as a direct result thereof, it would be your duty to return a verdict in favor of plaintiff. Then you would proceed to consider the issue of punitive or exemplary damages."

The court then charged Code § 105-302 regarding wilful misrepresentation of a material fact and discussed the nature of punitive damages. The court concluded its charge by instructing the jurors to return their verdict in general form, indicating that if they should find compensatory damages for plaintiff and also find punitive or exemplary damages for plaintiff, the verdict should separate the compensatory damages from any award of punitive damages. No instruction was given to enter separate verdicts as to each count of the complaint.

After entering deliberations, the jury returned to the court with the following question: "Yes sir, your honor, we have Count One and Count Two. We had thought we were arriving at just two figures, and now it comes down to Count One and Count Two, and we can't quite separate the two." The court responded, "Count One would relate to the instructions given you in respect to punitive damages or exemplary damages. Count Two will be related to the other damages." The court then iterated its earlier instruction regarding the general form in which the verdict was to be returned and concluded, "Does that answer your question? And that's the only significance that the counts would have." Defendant excepted to this additional charge, again for the cited reasons.

"[T]he appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law . . ." Code Ann. § 70-207 (c) (Ga. L. 1965, pp. 18, 31; 1966, pp. 493, 498; 1968, pp. 1072, 1078). At best, we find the instant charge to be hopelessly confusing; at worst, a misstatement of law. "Exemplary damages can never be allowed in cases arising on contracts." Code § 20-1405. The language of the statute is unequivocal, and the instruction herein intimating law to the contrary is misleading and improper.

In *Southern R. Co. v. Hardin,* 107 Ga. 379, 383 (33 SE 436), the plaintiff sued the defendant on two counts, only one of which was proven at trial. The jury returned a general verdict for the plaintiff. On appeal, the Supreme Court held as follows: "Under the charge of the court the jury could have based their verdict on . . . [the unproven count]. We can not, as a matter of law, say that they did not. The verdict might have been based on one or the other of these causes, or partly on both . . . As it is uncertain which cause of action the jury considered in awarding the damages, they being at liberty under the

charge of the court to consider both, the verdict must be set aside and a new trial awarded." Accord, see *Flint Explosive Co. v. Edwards,* 86 Ga. App. 404 (2), 412—414 (71 SE2d 747); *Blanchard v. Tucker, Willingham & Co.,* 34 Ga. App. 405 (129 SE 908).

Similarly, in the present case, plaintiff sued defendant on two counts, only one of which could support an award of punitive damages. The court's charge did not so indicate however. The jury returned a general verdict awarding, in part, $5,000 in punitive damages. We are, therefore, unable to determine whether the jury hinged its award of punitive damages upon a finding of defendant's liability for wilful misrepresentation of fact or for breach of contract or partly for liability as to one count and partly for liability as to the other.

In view of this uncertainty, it was error to deny the defendant's motion for new trial on the issue of punitive damages. Consequently, the judgment is affirmed on condition that the award of $5,000 for punitive damages be written off by the plaintiff, American Academy of Psychotherapists, Inc. Otherwise, the judgment is reversed, and the case is remanded for a new trial.

3. Defendant further avers error in admitting into evidence a memorandum from defendant's Director of Marketing and Sales for its downtown Atlanta hotel, to a Mr. Neal Simmons, summarizing the "handling" of plaintiff's convention. Defendant objected at trial to the admission of this memorandum arguing that it was a privileged communication in that Mr. Simmons was, at the date of the writing, the chief in-house attorney of defendant's hotel division. Though the memorandum was not an outright admission of defendant's liability, it did tend to contradict certain elements of the director's testimony at trial and was admitted for impeachment purposes.

"There are certain admissions and communications excluded from consideration of public policy. Among these are . . . [b]etween attorney and client." Code Ann. § 38-418 (a) (2) (Ga. L. 1959, p. 190; 1978, p. 1657, eff. July 1, 1978). "Communications to any attorney, or his clerk, to be transmitted to the attorney pending his employment, or in anticipation thereof shall never be heard by the court." Code § 38-419. Though the attorney/client privilege has rarely been discussed at length by our courts, it is generally accepted that "[t]he privilege in question is for the protection and benefit of the client, not of the attorney, so that the client's disclosures may not be used against him in controversies with third persons, and so it is designed to secure the client's confidence in the secrecy of his communication, and to promote greater freedom of consultation between clients and their legal advisers, its object being to secure freedom in communications between attorney and client in order that the former

may act with full understanding of the matters in which he is employed." 97 CJS 783-784, Witnesses, § 276.

(a) Plaintiff, in opposing this enumeration, first argues that the subject memorandum was nothing more than a "business memo" neither seeking nor offering legal advice and thus was not a confidential communication between client and attorney.

It is undisputed in the record before us that the local marketing director, in writing the memorandum, was communicating with Mr. Simmons in his representative capacity as attorney of defendant and would not have had occasion to correspond with Mr. Simmons "other than by virtue of his capacity as corporate attorney" of defendant. Though the memorandum does not specifically request legal advice, it does conclude, "I appreciate your help on this, and would like to be kept informed of the proceedings."

Reviewing the memorandum as a whole, we think it clear that it was drafted one month following plaintiff's aborted convention as a record of events prepared with an eye toward assessing defendant's potential liability in the event of litigation. Further, the local marketing director was clearly writing the memorandum in his capacity as defendant's employee regarding matters within the scope of his employment.

(b) Plaintiff next cites *Atlanta Coca-Cola Bottling Co. v. Goss,* 50 Ga. App. 637, 639 (179 SE 420), and claims that defendant has attempted to invoke the privilege as a shield against liability for fraud or perjury. In that case this court quoted from Gebhardt v. United Railways Co., 220 SW 677, and stated that " '[t]he privileged communication may be a shield of defense as to crimes already committed, but it can not be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society,' frauds, or perjuries." Though the instant memorandum does tend to call into question certain of the marketing director's testimony, we do not find the discrepancies so egregious as to constitute perjury or a fraud upon the court. Accordingly, we find that in the present case those public policies giving rise to the attorney/client privilege should not be eschewed on these grounds.

(c) Plaintiff further opposes defendant's assertion of privilege in averring that since the memorandum came into plaintiff's possession "presumably by discovery," the privilege has been "lost, waived or abandoned."

In *Southern R. Co. v. White,* 108 Ga. 201, 204 (2) (33 SE 952), a witness was prohibited from testifying at trial that she had written a letter to an attorney at the plaintiff's request and signing the plaintiff's name stating facts relevant to the dispute therein. The letter had subsequently been forwarded voluntarily to the de-

fendant's counsel by the attorney to whom the letter had been addressed. The Supreme Court held: "The circumstances under which the defendant's counsel came into possession of the letter would not render it admissible. It was a confidential communication from client to attorney, and is protected . . ." Similarly, in *McKie v. State,* 165 Ga. 210 (3) (140 SE 625), where the defendant in a homicide prosecution wrote letters to an attorney requesting his employment in another matter, the Supreme Court held, "Communications between client and attorney are excluded from public policy, and are incompetent as evidence against the client upon her trial for the homicide of her husband; and this is so whether such letters were voluntarily produced by the attorney to be used against the client, or were surreptitiously or otherwise taken from the possession of the attorney."

In view of this precedent, we find no waiver of the attorney/client privilege herein. Moreover, even if a waiver of the privilege might have occurred in the present case, plaintiff's counsel's sole assertion at trial that he "can't imagine how I would get hold of such a document if it wasn't from the defendant in this case" clearly fails to demonstrate facts sufficient to constitute a waiver of the privilege.

(d) Finally, plaintiff contends that defendant, as a corporation, could not avail itself of the attorney/client privilege under the instant facts. Plaintiff correctly notes that the issue of when, if ever, a corporation can claim the protection of the attorney/client privilege has never been squarely addressed in this state. However, in *Fire Assn. of Philadelphia v. Fleming,* 78 Ga. 733, 737 (3) (3 SE 420), letters from the defendant corporation's adjuster to its attorney were produced and admitted into evidence over objection. "The objection to it was, that in forcing the production of this correspondence, they were violating the confidence that existed between client and attorney, and which was protected under the law." The Supreme Court concluded: "That far, we think there was error, and that this testimony ought to have been repelled." The court thus impliedly held, and we expressly hold today, that a corporation can in fact avail itself of the attorney/client privilege. For a particularly lucid discussion of this point, see Radiant Burners, Inc. v. American Gas Assn., 320 F2d 314 (7th Cir. 1963), cert. denied 375 U. S. 929 (84 SC 330, 11 LE2d 262) (1963).

As the structure of corporate hierarchies has become increasingly complex with numerous levels of communication generating a seemingly infinite volume of intra-office correspondence, significant difficulties have developed in the application of this privilege, however. The present controversy amidst the federal

courts is indicative and instructive in this regard.

"[B]ecause a corporation can speak or hear only through its human agents, we must determine the circumstances in which employee communications can be classified as the corporate client's communications.

"Two tests have developed in the federal courts. The first is the 'control group' test formulated in *City of Philadelphia v. Westinghouse Electric Corp.,* 210 FSupp. 483 (E.D. Pa.) *mandamus and prohibition denied sub nom., General Electric Co. v. Kirkpatrick,* 312 F2d 742 (3rd Cir. 1962), *cert. denied,* 372 U. S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963). In this test, an employee's statement is not considered a corporate communication unless the employee 'is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority(.)' *Id.* at 485. It is the most widely used test. *Virginia Electric & Pow. Co. v. Sun Shipbuilding & D.D. Co.,* 68 F.R.D. 397, 400 (E.D. Va. 1975).

"The second test [the so-called 'subject matter' approach] is that formulated in *Harper & Row Publishers, Inc. v. Decker,* 423 F2d 487 (7th Cir. 1970), *aff'd. by an equally divided court,* 400 U. S. 348, 91 S. Ct. 479, 27 L.Ed.2d 433 (1971). In this test 'an employee of a corporation, though not a member of its control group, is sufficiently identified with the corporation . . . where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.' *Id.* at 491-492." Diversified Industries, Inc. v. Meredith, 572 F2d 596, 608 (8th Cir. 1977) (en banc).

Both approaches have been criticized. The "control group" test has been deemed misleadingly to "equate corporate clients which individual clients" insofar as it unrealistically presumes that all information relevant to a legal problem can be gleaned from "top level executives" and, further, "inhibits the free flow of information to a legal adviser" from the lower and middle management personnel with direct knowledge of such information. Diversified Industries, Inc. v. Meredith, supra, 572 F2d 596, 608-609. The "subject-matter" test, on the other hand, has been criticized as enabling "the corporation's management — via agents — to 'communicate' to counsel the details of transactions about which management is only dimly aware and to have these communications protected by the attorney-client privilege" thus encouraging "senior managers purposely to ignore important information they have good business

reasons to know and use" and seriously impeding the liberal exercise of discovery which modern procedural rules seek to foster. United States v. Upjohn Co., 600 F2d 1223, 1227 (6th Cir. 1979). See Upjohn Co. v. United States, —— U. S. ——, 101 SC 677, —— LE2d —— (1981).

After reviewing both approaches and the difficulties inherent in each, the court in Diversified Industries, Inc. v. Meredith, 572 F2d 596, 609, supra, offered the following ramified "subject matter" test: "[T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents. We note, moreover, that the corporation has the burden of showing that the communication in issue meets all of the above requirements." Having considered the various approaches at some length, we conclude that this modified subject-matter test of Diversified Industries, Inc. v. Meredith, supra, best strikes an appropriate balance between the competing policies here extant while providing some guidance to trial courts in an effort to diminish the inconsistencies of case-by-case determination.

In passing, we note that our adoption of this test is in no manner inconsistent with our decision in *Atlantic C. L. R. Co. v. Daugherty*, 111 Ga. App. 144 (141 SE2d 112), where we held that statements of railroad crew members to the railroad's investigator following an accident were not privileged even though subsequently transmitted to the railroad's attorney. Those statements failed to meet the initial requirement of the test herein adopted as they were not "made for the purpose of securing legal advice," but were merely transferred to counsel when litigation ensued.

Having established these standards, we note that while the memorandum here in question (see subdivision 3 (a) above) appears to satisfy criteria (1), (4) and (5), the record is devoid of any evidence indicating that the local marketing director wrote the memorandum at the direction of any corporate superior or of any evidence that he possessed independent corporate authority to communicate with defendant's counsel regarding legal matters and act upon legal advice rendered thereon. Such a showing is essential for without it we cannot determine whether he was acting on behalf of the corporation in communicating with its attorney. Accordingly, we must conclude that defendant has failed to meet its burden of proving the instant

memorandum to have been a privileged communication. The court did not, therefore, err in admitting the evidence.

4. Defendant next asserts that the trial court erred in denying its motion for mistrial following an unsolicited remark by Dr. Brown in the jury's presence to the effect that he had been told, after plaintiff's convention had been relocated, that defendant was willing to pay for certain of plaintiff's additionally incurred expenses. In support of its motion, defendant urged that the testimony related to an offer of compromise and amounted to a hearsay admission of liability.

"This enumeration is without merit. 'The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused. (Cits.) Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with.' *Atlantic C. L. R. Co. v. Smith,* 107 Ga. App. 384 (6) (130 SE2d 355) (1963)." *Firestone Tire &c. Co. v. King,* 145 Ga. App. 840, 843 (2) (244 SE2d 905) (1978).

The instant comment was spontaneous and unresponsive to the question posed. The court immediately instructed the jury not to consider that testimony. In the context of a two-day trial and all of the evidence adduced therein, we do not find the remark to have been so prejudicial as to demand a mistrial as a matter of law.

5. Finally, defendant enumerates error in the denial of its motion for mistrial following a question and comment of the court directed to defendant's counsel while in the presence of the jury. The colloquy occurred during the cross examination of Dr. Brown. Defendant's counsel was generally asking questions relating to Dr. Brown's familiarity with the term "holdover" and with the "situation" that occurs when a hotel guest refuses to vacate his or her room after the period for which it was reserved. The court then interjected, "Is it your position that a hotel has no legal right to require you to leave at the expiration of your reservation period? . . . They do it every day." The jury was then retired at defendant's counsel's request.

Defendant moved for a mistrial contending that the court's impromptu remarks constituted an expression of opinion of the evidence in the case in violation of Code § 81-1104. During the exchange that followed, the court noted that counsel was "delving into an area of inquiry that this court cannot anticipate the questions you intend to ask," and further indicated that if one of defendant's defenses was "that tenants were holding over out there in the face of reservations and could not be evicted," such a defense was contrary to law and would not be permitted. Additionally, the court noted,

"There's no issue raised in the pleadings about holdover at all."

Having reviewed the transcript, we agree with the trial court's appraisal. Accordingly, we find that the court's comment was not an improper expression of opinion of the evidence, but was a warranted request for clarification as to defendant's position in pursuing this line of questioning. Moreover, even if the court's remarks could be construed as a comment on the evidence, there being no issue in the case regarding holdover, that comment certainly was not harmful error.

*Judgment affirmed on condition. Banke and Pope, JJ., concur.*

DECIDED FEBRUARY 11, 1981.

*Elaine Whitehurst, George W. Hart, Michael G. Frick,* for appellant.
*Richard N. Hubert,* for appellee.