A89A0447. SOUTHERN GUARANTY INSURANCE COMPANY OF GEORGIA v. ASH et al.
(383 SE2d 579)

BIRDSONG, Judge.

This is an interlocutory appeal of a discovery order. This appeal concerns the scope of the attorney-client privilege between a corporate client and its counsel, and the distinction between legal and business advice.

The order pertinently requires "[t]he [appellant] produce all correspondence, letters, newsletters and directives from its attorneys which are of a general nature, directing and advising the insurance company in the day to day business of handling no-fault or PIP claims. The [appellant] shall also produce all letters, newsletters, and

other documents from its attorneys which are used by the [appellant's] adjustors in the day to day business of handling, processing and adjusting no-fault or PIP claims. . . . The [appellant] is not required to produce correspondence or letters from its attorneys which are directed to specific cases pending in which Southern General Insurance Company of Georgia or its insureds are parties."

Appellant asserts that the order erroneously compels production of documents clearly protected by attorney-client privilege, and that the trial court has required production of certain materials prepared by counsel, at appellant's specific request, for the purpose of providing legal advice.

Appellee asserts that the scope of protection provided by the attorney-client privilege to an attorney's advice to his client is controlled by *Marriott Corp. v. American Academy &c.*, 157 Ga. App. 497 (277 SE2d 785). Although *Marriott* establishes a five-part test, which is controlling in determining whether certain communications from a corporate client to counsel are protected by the attorney-client privilege, it is not applicable to those situations concerning the protection of an attorney's advice given to his corporate client. The latter situation is governed by long-standing, express statutory provisions of this state.

In *Upjohn Co. v. United States*, 449 U. S. 383, 393 (101 SC 677, 66 LE2d 584), the Supreme Court observed that "if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." We will apply this philosophy in resolution of this issue to the extent that existing statutory law permits. "A proper application of the privilege . . . requires a bright line in order to reassure attorneys and corporate managers of the secrecy of their communications." Waldman, Beyond *Upjohn*: The Attorney-Client Privilege in the Corporate Context, 28 William & Mary Law Rev. 473, 483.

"Our Code recognizes certain privileges, including the attorney-client privilege, and prohibits the evidentiary use of communications protected by the privilege. See OCGA §§ 24-9-21; 24-9-24 and 24-9-25." *Williams v. State*, 258 Ga. 281 (5) (368 SE2d 742). "Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." (Emphasis supplied.) OCGA § 9-11-26 (b) (1); *Morton v. Gardner*, 242 Ga. 852, 857 (252 SE2d 413).

It has been said, and not without cause, that "[t]he exact nature of matters within the attorney-client relationship in the Georgia law is in a state of hopeless confusion." Agnor, Use of Discovery under the

Ga. Civil Practice Act (3rd ed.), § 2-20. There are four primary statutes that address the attorney-client privilege, and three of these statutes can be traced directly to the Code of 1860. It has been asserted "[t]hese statutes are at the center of a confusing and indefinite picture of the attorney-client privilege in Georgia." Milich, The Attorney-Client Privilege: The Common Law & Ga.'s Uncommon Statutes, 5 Ga. State Law Rev. 27, 36. We do not attempt today to unravel this so-called web of confusion, rather we seek to establish a relatively "bright-line" test, consistent with the century-old statutes of this state.

OCGA § 24-9-21 pertinently provides: "There are certain admissions and communications excluded on grounds of public policy. Among these are . . . (2) Communications between attorney and client. . . ."

OCGA § 24-9-24 pertinently provides: "Communications to any attorney . . . pending his employment or in anticipation thereof shall never be heard by the court. *The attorney shall not disclose the advice or counsel he may give to his client, nor produce or deliver up . . . other papers*, except evidences of debt left in his possession by his client. This Code section shall not exclude the attorney as a witness to any facts which may transpire in connection with his employment." (Emphasis supplied.)

OCGA § 24-9-25 provides statutory direction, not here applicable, regarding when an attorney may testify for or against his client. Although we have no reservations regarding the general legal principles therein expressed, we find the facts of *Gilbert v. State*, 169 Ga. App. 383 (313 SE2d 107), *Buffington v. McClelland*, 130 Ga. App. 460 (3) (203 SE2d 575), and *Parker v. Wellons*, 43 Ga. App. 721 (160 SE 109) distinguishable from this case. Likewise, *Clarkson Indus. v. Price*, 135 Ga. App. 787 (218 SE2d 921), involving "work product" exception, is distinguishable.

OCGA § 24-9-27 (c) provides: "No party or witness *shall be required to make discovery* of the advice of his professional advisers or his consultation with them." (Emphasis supplied.)

It has been suggested that "[t]o the extent these three privilege statutes [OCGA §§ 24-9-21; 24-9-24; 24-9-27] are inconsistent with common law doctrine, the courts can and should ignore them." Milich, 5 Ga. State Univ. Law Rev., supra at 74. However, these statutes are part of the modernized recodification of Georgia laws and should be accorded full force and effect until revised or revoked. See OCGA §§ 1-1-1; 1-1-2. Moreover, "statutory privileges of counsel *are conferred for the benefit of clients* and are sacred." (Emphasis supplied.) 2 EGL, Attorney & Client, § 51, citing *Dover v. Harrell*, 58 Ga. 572.

In 1887, the Supreme Court in *Fire Assn. of Philadelphia v.*

*Fleming*, 78 Ga. 733 (3) (3 SE 420), held that "[l]etters written between the attorney and the agent of a corporation, which was his client, containing confidential communications between the two, should *not* have been forced to be produced for use in evidence against the client." (Emphasis supplied.) The court also opined that pursuant to Code § 3798, currently OCGA § 24-9-24, a letter from the attorney to the agents of his client containing confidential communications and asking for instructions in reference to the case, was inadmissible against such client. Id. at 738 (6). In *Rylee v. Bank of Statham*, 7 Ga. App. 489 (1) (a) (67 SE 383), this court held that the contents of a letter written by an attorney to his client were privileged, "in so far as any information or advice communicated by [the attorney] to his client is concerned." Id. at 492. In *Braxley v. State*, 17 Ga. App. 196 (86 SE 425), this court, citing Code §§ 5785 and 5786 (OCGA §§ 24-9-21; 24-9-24), held that the trial court "should have declined to hear from the client any testimony as to communications or advice imparted to him by his counsel during the relationship" on grounds of public policy. Id. at 203; see *Miles v. State*, 100 Ga. App. 614, 616 (2) (112 SE2d 237) (recognizing that Code § 38-1102, currently OCGA § 24-9-27 (c), provides that no party shall be required to make discovery as to any matter involving "the advice of his professional advisers or his consultation with them. . . .") In *Campbell v. State*, 149 Ga. App. 299 (1) (254 SE2d 389), this court held that "[t]estimony of a client as to *advice* given to him by his counsel is incompetent and properly excluded. Communications between attorney and client, except in circumstances not here pertinent, are excluded as a matter of public policy, both in criminal and civil matters." (Emphasis supplied.) In *Associated Grocers Co-Op v. Trust Co.*, 158 Ga. App. 115, 116-117 (279 SE2d 248), we reiterated the above principles, holding that "[t]he statutes and case law of this state are both in accord that [under the attendant circumstances], testimony of a client as to *advice* given to him by his counsel is incompetent, and on timely motion, should be excluded. Communications between attorney and client are 'excluded from consideration of public policy.' [Cits.] [A]nd this court has held that the privilege applies to communications *to the officers and employees* of a corporate client as well as to individual clients." (Emphasis supplied.)

It thus appears that *once an attorney-client relationship has been duly established between an attorney and his corporate client that the legal advice confidentially communicated to the authorized agents of the client is by statute protected from discovery, and testimony concerning the content of such advice is inadmissible on grounds of public policy.* OCGA §§ 24-9-21; 24-9-24; 24-9-27 (c); see generally cases cited in paragraph above; 97 CJS, Witnesses, § 276 (c) (3). Wisely or not, the statutes make no distinction between *legal* ad-

vice given in regard to specific cases pending and *legal* advice concerning day-to-day business matters. See generally *Taylor v. Taylor*, 179 Ga. 691, 693 (177 SE 582). Neither do the statutes distinguish between confidentially communicated legal advice that is requested specifically by the corporate client, nor preventive legal advice that is confidentially provided sua sponte by the lawyer to the *authorized* agents with whom he regularly deals of his *established* corporate client. With certain limited exceptions not here relevant, all such legal advice is protected by privilege. See, e.g., for exceptions, *Marriott*, supra at 502 (3) (b), citing *Atlanta Coca-Cola &c. v. Goss*, 50 Ga. App. 637, 639 (179 SE 420) (legal advice made for the purpose of furthering a crime, fraud, perjury, or other unlawful end is not protected); *In re Grand Jury*, 575 FSupp. 777 (D.C. Ga. 1983) (legal advice sought for purpose of committing either tort or crime not protected).

The above-cited statutes, however, do not extend public policy protection to communications made by lawyers to their corporate or individual clients which are not of a confidential nature. *Taylor*, supra at 693; see *Fowler v. Sheridan*, 157 Ga. 271, 273-275 (121 SE 308); *Burnside v. Terry*, 51 Ga. 186. Generally, the confidential nature of a legal opinion will not be destroyed by its exposure to employees within the corporate structure who are authorized, expressly or by business practice, to receive and act thereon. See *Assoc. Grocers*, supra at 117; *State of Mo. v. Adolf*, 700 SE2d 886, 889 (CA Mo.); Agnor, supra at 49; 97 CJS, Witnesses § 276 (c) (1); cf. *Diversified Indus. v. Meredith*, 572 F2d 596, 609 (USCA 8th Cir.) (communication must not be disseminated beyond those persons who need to know its contents).

It further is required that the attorney's advice must primarily concern legal advice rendered "in the line of his profession." See *Taylor*, supra at 693, *Atlanta Coca-Cola &c.*, supra at 639 (1); *Diversified Indus.*, supra at 602. "The privilege does not simply follow an attorney by virtue of his profession." Agnor, supra at 52. Moreover, "[t]he attorney-client privilege extends only to confidential communications made for the purpose of facilitating the rendition of *legal* services to the client. [Cit.] Thus, where the attorney acts merely . . . as a business adviser [cit.] the privilege is inapplicable." *United States v. Horvath*, 731 F2d 557, 561 (USCA 8th Cir.) "[T]he privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure. . . . [I]t seems well settled that the requisite professional relationship is not established when the client seeks *business or personal advice,* as opposed to legal assistance." (Emphasis supplied.) *Radiant Burners v. American Gas Assn.*, 320 F2d 314, 324 (USCA 7th Cir.), cert. den. 375 U. S. 929 (84 SC 380, 11 LE2d

262); see *In the Matter of Walsh,* 623 F2d 489, 494 (USCA 7th Cir.), cert. den. 449 U. S. 994 (101 SC 531, 66 LE2d 291) (business and other advice not privileged should be distinguished from professional legal services); see also *Marriott Corp.,* supra at 502 (3) (a); see generally 98 ALR2d 241, § 5; 97 CJS, Witnesses, § 280.

The burden is upon the corporation to establish that counsel's advice was privileged legal advice and thus not subject to discovery. See *Marriott Corp.,* supra at 505; *Walsh,* supra at 494 (10); *Diversified Indus.,* supra at 609 (15). In reaching this determination, the trial court should consider the totality of the circumstances. In addition to the requirement that an attorney-client relationship exists, relevant factors generally include, but are not limited to, the nature and purpose of the communication and how and to whom the communication was made. In the case at bar, we note that certain of the allegedly protected communications from counsel apparently were disseminated using a newsletter format. As use of a newsletter is more consistent with dissemination of routine business advice than with transmittal of confidential legal advice, the totality of the circumstances surrounding these particular communications should be strictly scrutinized.

In certain circumstances, the trial court may desire to conduct an in camera proceeding to assist it in determining whether counsel's advice constituted privileged legal advice that is not subject to discovery. In camera proceedings are appropriate, for example, "when the underlying facts demonstrating the existence of the privilege may be presented only by revealing the very information [to the court that is] sought to be protected by the privilege." *Walsh,* supra at 494, n. 5.

This case is remanded to the trial court for reconsideration of appellee's motion to compel discovery in a manner consistent with this opinion.

*Judgment reversed and case remanded with direction. Deen, P. J., and Benham, J., concur.*

DECIDED JUNE 1, 1989 —
REHEARING DENIED JUNE 21, 1989.

*Darroch & Obenshain, Robert M. Darroch, Mark A. Barber,* for appellant.

*Jordan & Bonder, H. Garold Jordan,* for appellees.