**Steven E. LAZAR, Plaintiff,**

v.

**D. Rush MAUNEY, James L. Bruce, Jr., John Boonstra, Sam F. Dayton, and Globaltech Industries, Inc., Defendants.**

**No. Civ.A. 2:99-CV-0062-WCO.**

United States District Court,
N.D. Georgia,
Gainesville Division.

March 24, 2000.

---

Marcia M. Ernst, Holly Beth Anderson, Smith Gambrell & Russell, Atlanta, GA, for Steven E. Lazar, plaintiff.

Thomas Bart Gary, Jefferson M. Allen, Freeman Mathis & Gary, Atlanta, GA, for D. Rush Mauney, James L. Bruce, Jr., John Boonstra, Sam F. Dayton, defendants.

E. Wycliffe Orr, Orr & Orr, Gainesville, GA, for Globaltech Industries, Inc., defendant.

### ORDER

O'KELLEY, Senior District Judge.

This case is before the court for consideration of plaintiff's motion to compel [16–1] and plaintiff's motion to strike defendants' brief opposing the motion to compel and for a protective order preventing defendants' use of a privileged document or its contents [21–1]. The court will consider the motion to strike first. The brief subject to the motion to strike was submitted on behalf of defendants Mauney, Bruce, Boonstra, and Dayton ("defendants"). Defendant GlobalTech Industries, Inc. ("GlobalTech") and its counsel were not a part of the following controversy.

### I. *MOTION TO STRIKE*

Plaintiff moves this court to strike defendants' brief [19–1] in opposition to plaintiff's motion to compel on the grounds that it repeatedly relies on a privileged document. The allegedly privileged document is a two-page letter dated June 7, 1999, from plaintiff to his attorneys regarding the instant litigation (the "letter"). Plaintiff maintains that the letter was inadvertently and involuntarily produced by plaintiff's counsel in such a manner that the attorney-client privilege was not waived. Thus, plaintiff moves to strike defendants' brief in opposition to the motion to compel because it repeatedly refers to the privileged letter and has the letter attached to the brief as an exhibit. Additionally, plaintiff requests an order protecting the letter from further use by the defendants.

### A. *Background*

For purposes of the motion to strike, the court finds the relevant facts are as follows. The letter, dated June 7, 1999, was composed by plaintiff and sent to his attorneys in this case. The letter was in regard to the instant litigation and contained plaintiff's thoughts and responses to the defendants' counterclaims. It also had plaintiff's GlobalTech stock certificate stapled to it.

Defendants served their first request for production of documents on plaintiff on August 18, 1999. On September 17, 1999, plaintiff served his responses and objections to the requests. Defense counsel wished to review the requested documents before taking plaintiff's deposition, which was scheduled for October 13, 1999. On October 5, 1999, he requested to have the producible documents copied and delivered to him by October 7, 1999, rather than review them at the office for plaintiff's counsel.

Ms. Anderson, one of two attorneys for the plaintiff in this matter, compiled and prepared the documents responsive to defendants' requests. Aff. Anderson ¶ 6. She reviewed "approximately two banker's boxes of [p]laintiff's documents and separated out all the materials [she] believed were covered by [d]efendants' [r]equests...." *Id.* at ¶ 7. Ms. Anderson flagged any material she believed was privileged, including the letter. However, the GlobalTech stock certificate which was stapled to the letter was producible and not subject to a privilege. Ms. Anderson attached copying instructions to the letter, as she did for all other partially privileged documents. She instructed that only the stock certificate was to be copied. The materials were sent to her law firm's on-site copying service. Two sets of copies were to be made, one set to be delivered to defendants and one set to be retained as a record of what was produced to defendants.

On October 7, 1999, Ms. Anderson became aware that part of the documents had to be sent to an off-site copy service because the on-site copy service was consumed with a rush copying job. Delivery to defense counsel was delayed until Friday, October 8, 1999. When she received both sets of materials, Ms. Anderson simultaneously reviewed both

sets, checking for the unintentional inclusion of privileged material and confirming that the two sets were identical. Nine-hundred and ninety-six pages were then delivered to defense counsel with a cover letter stating that the privilege log would arrive shortly under separate cover.

The following Monday, October 11, 1999, while filing the duplicate copies of produced documents, Ms. Anderson discovered that three pages of attorney-client privileged correspondence, two of which constituted the letter, had inadvertently been improperly copied and delivered to defense counsel. Ms. Anderson notified defense counsel of the disclosure by letter which was faxed and hand delivered that day. The letter stated that three pages of attorney-client privileged correspondence were "inadvertently produced" and that "plaintiff does not waive the privilege as to the documents, or any privileged documents, and requests their immediate return." Aff. Anderson, Ex. 4. Ms. Anderson also left a voicemail with both defense attorneys of record, Thomas Bart Gary and Jefferson M. Allen. At approximately 4:00 p.m. that day, Ms. Anderson and Mr. Allen agreed that Ms. Anderson could retrieve the privileged material.

Ms. Anderson maintains the following: "Mr. Allen stated that I could review the [p]roduction ... and remove the privileged material, if I left a redacted copy of the privileged materials retrieved. I did so...." Aff. Anderson, ¶ 17. She also maintains that Mr. Allen did not resist or object to her request for the return of the privileged material or to her actions achieving the return. Defendants do not contradict Ms. Anderson's rendition of the circumstances. Mr. Allen merely offers that Ms. Anderson did not ask if he retained a copy of the letter and he never said he did not keep a copy. *See* Aff. of Allen, ¶¶ 6 & 7.

On Tuesday, October 12, 1999, Ms. Anderson faxed plaintiff's completed privilege log to defense counsel. The log listed the letter and asserted that it was protected by the attorney-client privilege. *See* Aff. Anderson, Ex. 6. Defendants did not object to the assertion of the attorney-client privilege, Ms. Anderson's recovery of the letter, or plaintiff's privilege log. Plaintiff's attor-

neys were under the impression that the matter was resolved.

Plaintiff filed the present motion to compel production [16–1] on October 28, 1999. Defendants attached the letter as Exhibit C to their responsive brief. [19–1]. Defendants oppose the motion to compel on a number of grounds, including plaintiff's motivation for the documents requested. They explain that "[d]efendants' concern over the release of these documents to the [p]laintiff stems, in large measure, from a letter written and produced by [p]laintiff that describes his position in this litigation and his personal animosity toward [d]efendants." Def.s' Br. Opp.'n Pl.'s Mot. Compel, p. 2. Defendants continue to quote the letter a number of times in their fourteen-page brief. After the first quote, defendants inserted a footnote stating, "[t]his letter, attached as Exhibit C, was produced to counsel for Defendants with other documents produced in response to Defendant's [sic] Request to Produce Documents. Any claim of privilege is waived as to this letter and its subject." Def.s' Br. Opp.'n Pl.'s Mot. Compel, p. 2.

Before the filing of this brief, defendants had not revealed their position that the attorney-client privilege had been waived or that they had retained a copy of the unredacted letter. Anderson Aff. ¶ 23. On November 19, 1999, plaintiff's counsel sent defendants' attorneys a letter protesting defendants' actions, reasserting the attorney-client privilege, demanding the return of all copies of privileged material, and requesting defendants to withdraw their opposition brief and refile a substitute brief without mention of the letter. *See* Anderson Aff., Ex. 7. Defendants refused to do so, and plaintiff filed the motion to strike as a result.

### B. *Attorney–Client Privilege*

▆ "In a diversity action, state law governs the privileged nature of materials, sought in discovery." *In re Fink*, 876 F.2d 84, 85 (11th Cir.1989) (citing *Somer v. Johnson*, 704 F.2d 1473, 1478 (11th Cir.1983)). The present case is a diversity action governed by the law of Georgia. "Under the common law of Georgia, as codified in O.C.G.A. §§ 24–9–21(2), 24–9–24, and 24–9–

25, the attorney-client privilege bars revelation, discovery, and testimony of [attorney-client privileged materials by] a lawyer except when waived by the client or in very limited circumstances." *NationsBank, N.A. v. Southtrust Bank of Georgia, N.A.*, 487 S.E.2d 701, 708, 226 Ga.App. 888, 896 (Ga. App.1997) (insert added). The attorney-client privilege protects admissions and communications between the attorney, in his or her representative capacity, and the client, made for the purpose of securing legal advice or assistance. *See Marriott Corp. v. American Academy of Psychotherapists, Inc.*, 277 S.E.2d 785, 789–90, 157 Ga.App. 497, 501–03 (Ga.App.1981).

> Though the attorney/client privilege has rarely been discussed at length by [Georgia] courts, it is generally accepted that "(t)he privilege in question is for the protection and benefit of the client, not of the attorney, so that the client's disclosures may not be used against him in controversies with third persons, and so it is designed to secure the client's confidence in the secrecy of his communication, and to promote greater freedom of consultation between clients and their legal advisers, its object being to secure freedom in communications between attorney and client in order that the former may act with full understanding of the matters in which he is employed."

*Id.*, 277 S.E.2d at 789, 157 Ga.App. at 501–02. The letter in question is a communication made by plaintiff to his attorneys in this case regarding the instant litigation. It is clear to the court that the primary purpose of the letter was to communicate plaintiff's thoughts about and responses to defendants' counterclaims. In the letter, plaintiff also requested his counsel to inform him of the potency of his case against defendants. He did so with colorful and distasteful expressions.[1] Nevertheless, the letter clearly was a communication confidentially made to counsel for the purpose of securing legal advice and assistance and therefore is protected by the attorney-client privilege under Georgia law.

**1.** As the court finds this document is protected by the attorney-client privilege it will not openly

## C. Crime–Fraud Exception

■ Defendants maintain that the crime-fraud exception precludes the application of the attorney-client privilege to the letter. They argue that "[a] literal reading of the letter in question shows that the [p]laintiff has encouraged his attorneys to commit an aggravated assault upon the [d]efendants . . . ." Def.s' Resp. to Pl.'s Mot. Strike, p. 6. The court finds such an argument unconvincing for two reasons.

■ First and foremost, defendants have completely failed to provide any evidence or argument which would support the application of the crime-fraud exception. The attorney-client privilege does not protect communications made by a client to his attorney which contemplate crimes, fraud, or perjury. *See Marriott Corp. v. American Academy of Psychotherapists, Inc.*, 277 S.E.2d 785, 790, 157 Ga.App. 497, 502 (Ga.App.1981).

> As to violations of law or commissions of fraud, . . . the protection extends only to communications after the act or transaction is finished. It does not cover communications respecting proposed infractions of the law in the commission of a crime or the perpetration of a fraud. "The privileged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society," frauds, or perjuries.

*Atlanta Coca–Cola Bottling Co. v. Goss*, 179 S.E. 420, 421, 50 Ga.App. 637 (Ga.App.1935) (citations omitted); *see also In re Hall County Grand Jury Proceedings*, 333 S.E.2d 389, 391, 175 Ga.App. 349, 350 (Ga.App.1985); *Marriott*, 277 S.E.2d at 790, 157 Ga.App. at 502. To secure disclosure of privileged documents under this exception, the party seeking disclosure must make a *prima facie* showing that the communication was made in furtherance of illegal or fraudulent activity. *See In re Hall County Grand Jury Proceedings*, 333 S.E.2d 389, 392, 175 Ga.App. 349, 352 (Ga.App.1985); *Jefferson Ins. Co. v. Dunn*, 482 S.E.2d 383, 389, 224 Ga.App. 732,

discuss the language and terms used in the letter.

738 (Ga.App.1997), *rev'd on other grounds,* 496 S.E.2d 696, 269 Ga. 213 (Ga.1998), *vacated on other grounds,* 498 S.E.2d 373, 232 Ga.App. 513 (Ga.App.1998); *compare Cox v. Administrator United States Steel & Carnegie,* 17 F.3d 1386, 1416 (11th Cir.1994) (requiring satisfaction of two-part test).

" 'It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud.' ... To drive the privilege away, there must be 'something to give colour to the charge'; there must be 'prima facie evidence that it has some foundation in fact.' ... When that evidence is supplied, the seal of secrecy is broken."

*Atlanta Coca–Cola Bottling Co. v. Goss,* 179 S.E. 420, 421, 50 Ga.App. 637, 639 (Ga.App. 1935) (citations omitted). Defendants have not attempted to submit any evidence whatsoever which would make a prima facie showing. They have asserted this most serious allegation without any support for their accusations except for the letter itself.

This brings the court to its second reason for finding the crime-fraud exception inapplicable, the letter itself. The letter does indeed make inflammatory remarks about the defendants and the progress of the case. Nonetheless, it is clear that plaintiff's remarks at most amount to a client's spouting off untoward insults about his opponents and their case to his attorneys. The court is absolutely astounded by defendants' claim that plaintiff's comments amount to the threat of crime comparable to the "tragic events in Columbine, Colorado." Def.s' Resp. to Pl.'s Mot. Strike, p. 7. The court agrees with plaintiff's reply that such an equation "is disrespectful of the victims and their families and trivializes what happened there. If [d]efendants truly placed that degree of importance on the letter's contents, they would not have kept silent for over a month, quietly placing themselves in perceived harm's way by meeting with Plaintiff at depositions and revealing the alleged danger only as part of a discovery dispute...." Pl.'s Reply, p. 9–10 [33–1]. Frankly, the court does not see how defendants believed such an analogy would be useful. Indeed, the court finds it to be careless and disgraceful.

Not only is the crime-fraud exception claim wholly unfounded, but also its presentation to the court violates the Federal Rules of Civil Procedure and the Georgia Canons of Ethics. Mr. Allen and Mr. Gary signed defendants' brief in response to the present motion to strike. In doing so, they represented that their legal contentions were warranted by existing law and that the factual allegations contained therein had evidentiary support. *See* Fed.R.Civ.P. 11. Mr. Allen and Mr. Gary violated Federal Rule of Civil Procedure 11(b)(2) by submitting the crime-fraud exception argument to the court when it is in no way supported by the law or facts of this case. Moreover, they violated Directory Rule 7–102 of the Georgia Canons of Ethics which prohibits a lawyer in the representation of his client from "knowingly advancing a claim or defense that is unwarranted under existing law...." Ga. State Bar Rules & Regs., Canons of Ethics, Rule 3–107, Directory Rule 7–102.

### D. *Waiver*

Having determined that the letter is protected by the attorney-client privilege, the court now turns to the question of whether the privilege was waived through the inadvertent disclosure of the letter by plaintiff's counsel. Disclosure of privileged communications can waive the privilege. However, under Georgia law, "it is axiomatic that the privilege belongs to the client, not the attorney[.]" *Peterson v. Baumwell,* 414 S.E.2d 278, 280, 202 Ga.App. 283, 285 (Ga.App.1991); *see Osborn v. Georgia,* 504 S.E.2d 74, 77, 233 Ga.App. 257, 260 (Ga.App.1998); *Moclaire v. Georgia,* 451 S.E.2d 68, 72, 215 Ga.App. 360, 363 (Ga.App.1994). Thus, only the client may waive the privilege. *See Osborn v. Georgia,* 504 S.E.2d 74, 77, 233 Ga.App. 257, 260 (Ga.App.1998); *see also NationsBank, N.A. v. Southtrust Bank of Georgia, N.A.,* 487 S.E.2d 701, 708, 226 Ga.App. 888, 896 (Ga.App.1997) ("the lawyer has no power to waive" the attorney-client privilege). "The privileged nature of a confidential communication is not lost or waived even if the attorney should *voluntarily or inadvertently* produce a transcript of the communication." *Revera v. Georgia,* 477 S.E.2d 849, 851, 223 Ga.App. 450, 452 (Ga.App.1996) (emphasis

added) (citation omitted). See also *McKie v. Georgia,* 140 S.E. 625, 165 Ga. 210 (Ga.1927), where the Georgia Supreme Court held that attorney-client communications are absolutely protected regardless of whether such communications are voluntarily, surreptitiously, or otherwise obtained by third parties. The law of Georgia "will not permit a party to whom a confidential communication is made, directly or indirectly, to violate the confidence reposed." *McKie,* 140 S.E. at 629, 165 Ga. at 220.

### E. *Attorney–Client Privilege Not Waived*

■ In accordance with the foregoing, the court finds that plaintiff did not waive the attorney-client privilege in regard to the three pages inadvertently disclosed by his counsel. The inadvertent disclosure of plaintiff's counsel does not waive the plaintiff's attorney-client privilege because the privilege can be waived only by the intentional relinquishment of the privilege by the client. *See Moclaire v. Georgia,* 451 S.E.2d 68, 72, 215 Ga.App. 360, 363 (Ga.App.1994) (without evidence that client authorized disclosure of attorney-client privileged communications to third persons, there is no waiver). Thus, the letter remains privileged.

### F. *Ethical Considerations*

■ The court is deeply disturbed by the conduct of Mr. Gary and Mr. Allen and refuses to overlook the ethical implications arising therefrom. Counsel for plaintiff inadvertently produced three pages of privileged materials within a batch of nearly 1,000 produced pages. She had taken reasonable precautions to prevent such an occurrence, but nonetheless three pages were inadvertently produced. "Mistakes of this type are likely to occur in cases with voluminous discovery. At best, these situations are resolved *amicably,* by counsel returning documents which are *obviously privileged and inadvertently produced.* It is *unfortunate* that such could not be the case here and that the [c]ourt was forced to expend a great deal of time on this relatively minor matter." *United States v. Pepper's Steel & Alloys, Inc.,* 742 F.Supp. 641, 643–44 (S.D.Fla.1990) (emphasis added). Despite the fact that Ms. Andersen immediately and courteously requested and received the privileged pages and re-asserted the attorney-client privilege a number of times, defense counsel secretively retained a copy of the letter, knowing it was allegedly privileged, and published it in a public proceeding without seeking guidance from the court. By failing to notify plaintiff's counsel that they had retained a copy of the letter and disputed the privilege assertion, Mr. Gary and Mr. Allen implicitly, if not explicitly, behaved dishonestly. They exploited Ms. Anderson's mistake and deceived her into believing that the situation had been rectified and resolved. This unprofessional and dishonest course of conduct was taken despite defendants' admission that the letter "certainly provides little or no assistance to the defense of [p]laintiff's substantive claims." Def.s' Resp. to Pl.'s Mot. to Strike, p. 12.

This court requires that all lawyers practicing before it comply with the Code of Professional Responsibility and Standards of Conduct of the State Bar of Georgia. *See* L.R. 83.1(C.), NDGa. Mr. Gary and Mr. Allen are also members of the State Bar of Georgia. Accordingly, they are prohibited from engaging in professional conduct involving dishonesty, fraud, deceit, or misrepresentation. *See* Ga. State Bar Rules & Regs., Rule 4–102, Standard 4; Ga. State Bar Rules & Regs., Rule 3–101, Directory Rule 1–102(A)(4). Additionally, they have a duty to "be courteous to opposing counsel and should accede to reasonable requests" of opposing counsel which do not prejudice the rights of their clients. Ga. State Bar Rules & Regs., Canons of Ethics, Rule 3–107, Ethical Consideration 7–38. They must assist in maintaining the integrity and competence of the legal profession. Ga. State Bar Rules & Regs., Canons of Ethics, Canon 1, Rule 3–101.

Although the Georgia Canons of Ethics do not expressly forbid a recipient of inadvertently produced privileged materials from using them, Georgia case law expressly and vigorously provides that such documents remain privileged. The logical corollary from that is DO NOT USE PRIVILEGED DOCUMENTS, especially without court guidance. Moreover, simply because there is no specifically detailed rule prohibiting certain conduct does not make it *a fortiori* ethical. Indeed,

the Preamble to the Georgia Canons of Ethics explains that

> [n]o code or set of rules can be framed which will particularize all duties of the lawyers in varying phases of litigation or in all the relations of professional life. The ... [Georgia] canons of ethics are adopted by the State Bar of Georgia as a general guide, yet the enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned.

Ga. State Bar Rules & Regs., Canons of Ethics, Preamble; *see generally* Trina Jones, *Inadvertent Disclosure of Privileged Information and the Law of Mistake: Using Substantive Legal Principles to Guide Ethical Decision Making*, 48 EMORY L.J. 1255 (1999). Mr. Allen's excuse that Ms. Anderson did not ask if he retained a copy and that he never said he did not keep a copy is entirely inadequate. *See* Aff. of Allen, ¶¶ 6 & 7. Although Mr. Allen and Mr. Gary did not affirmatively misrepresent themselves, their conduct would lead a reasonable person to believe that they had not retained a copy of the letter or abused the attorney-client privilege. Thus, the court finds that Mr. Gary's and Mr. Allen's behavior in this matter violates the above described duties as well as those described in Part I.C.

## II. *CONCLUSION*

Let the court be perfectly clear: it will not tolerate unethical, dishonest, or unprofessional conduct by the attorneys before it, lest the honor of this profession be blemished and placed in disrepute. When attorneys behave as Mr. Gary and Mr. Allen did, it is no wonder that "the public, and perhaps the profession itself, seem increasingly convinced that lawyers are simply a plague on society[ ]" instead of professionals who behave with honesty and integrity. Geoffrey Hazard, Jr., *The Future of Legal Ethics*, 100 YALE L.J. 1239, 1240 (1991). Unfortunately, the present situation may occur all too often in everyday practice. But such a sad state of affairs will not prevent this court from recognizing and rebuking such conduct when it is brought to the court's attention.

Accordingly, plaintiff's motion for a protective order [21–1] is **GRANTED.** Defendants are **PROHIBITED** from any further use or distribution of the letter or its contents. The court is of the opinion that defense counsel's conduct and the publication of the letter has irreparably violated the attorney-client privilege with regards to the letter and that ordering the letter's return is akin to trying to retrieve feathers scattered to the wind from a burst pillow. Nonetheless, it is proper, and this court so **ORDERS** defendants to return to plaintiff's counsel all copies of the inadvertently produced privileged letter along with a list of every distribution made thereof. Defendants are to do so within twenty-four (24) hours of the receipt of this order. Pursuant to this court's inherent powers to manage discovery as well as its discretion to award protective orders conferred by Federal Rule of Civil Procedure 26(c), plaintiff's motion to strike defendants' response to plaintiff's motion to compel [21–1] is **GRANTED.** Consequently, defendants have no response to plaintiff's motion to compel. Failure to respond to the motion indicates that defendants have no opposition. LR 7.1B, NDGa. Thus, plaintiff's motion to compel [16–1] is **GRANTED,** and defendants are **ORDERED** to produce all documents requested in the motion to compel. Finally, the clerk is hereby **DIRECTED** to forward a copy of this order to the State Bar of Georgia.